IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JURNEE SCOTT LEYMAN, *Individually and as Administratrix of the Estate of Noah M. Leyman, Deceased*, § § § § | | |
| Plaintiff, § | | |
| and § | | |
| MICHAEL LEYMAN *and* ADRIANE LEYMAN, § § § | | |
| Intervenor Plaintiffs, § | | |
| v. § | 2:24-cv-129-BR | |
| AMAZON LOGISTICS, INC., AMAZON LOGISTICS, LLC, AMAZON.COM, INC., AMAZON.COM SALES, INC., AMAZON.COM SERVICES, LLC AMAZON WEB SERVICES, INC., TIMUR TRUCKING, LLC, FIRDAVS KUBAEV, ERGASH ANNAKUKOV, *and* KAMILODDIN ADILOV, § § § § § § § § § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO COMPEL**

Before the Court is the Motion to Compel filed jointly by Plaintiff and Intervenor Plaintiffs (collectively, "Plaintiffs"), with leave of the Court. (ECF 139). Plaintiffs move the Court to compel Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC, and Amazon Web Services, Inc. (collectively "Amazon") to produce their complete tower of insurance policies without confidentiality protections and with only the premium amounts redacted. (*Id.* at 1). For the following reasons, the Motion is DENIED.

## I.    BACKGROUND[1]

This diversity action arises from a motor vehicle accident that occurred in this judicial division on June 4, 2023, resulting in the death of Noah M. Leyman—the Plaintiff's husband—and in injuries to Plaintiff.[2] (ECF 80 at 1, 17). Intervenor Plaintiffs are the decedent's surviving parents. (ECF 79 at 2). Other than Amazon, Defendants are Firdavs Kubaev, Kamoliddin Adilov, and Ergash Annakukov[3]—whom Plaintiffs allege were driving the Amazon-owned tractor trailer that collided with the Leymans' vehicle—and Timur Trucking, LLC, the company those Defendants allegedly formed to contract with Amazon for that job. (*See, e.g.*, ECF 80 at 10, 16). The Court collectively refers to Kubaev, Adilov, Annakukov, and Timur Trucking, LLC as the "Timur Defendants."

The case originated on December 20, 2023 in the Southern District of Ohio, where the individual Timur Defendants are domiciled. (ECF 1 at 11). That Court transferred the case to this Court on June 12, 2024 after concluding that it lacked specific personal jurisdiction over Amazon for purposes of this suit. (ECF 38). Upon consent of the parties pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73(a), the case was then transferred for the undersigned United States Magistrate Judge to preside over all proceedings, through and including trial and the entry of judgment. (ECF 66).

---

[1] Some of the procedural history of this case is also related below in a discussion of this Court's prior Orders applicable to this dispute.

[2] The facts underlying this dispute are not generally at issue for the instant discovery dispute and are here recounted, as the pleadings present them, for the sole purpose of contextualizing this Order.

[3] Plaintiffs at various times in the pleadings spell this Defendant's name as either "Annakukov" or "Annakulov." (*Compare, e.g.*, ECF 80 at 16, ¶ 85 *with id.* at ¶ 87). The Court defers to the spelling employed by Defendants.

## II.     SUBJECT MATTER JURISDICTION

As a preliminary matter, the Court's jurisdiction over this matter is from 28 U.S.C. § 1332, which requires the controversy to be between citizens of different states and for an amount greater than the statutory threshold. The Fifth Circuit has clarified that any exercise of subject matter jurisdiction by a court "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992)) (alteration in original).

When a case is in the pleadings stage, this requires some party to invoke the court's subject matter jurisdiction by distinct and affirmative allegations of citizenship for each party. *Whitmire v. Victus Ltd. t/a Master Design Furniture*, 212 F.3d 885, 887 (5th Cir. 2000); *see also Pennie v. Obama*, 255 F. Supp. 3d 648, 671 (N.D. Tex. 2017). When, as here, a plaintiff originally brought the case in federal court, the initial burden to make those allegations is on the plaintiff. *Whitmire*, 212 F.3d at 887.

However, the duty to verify the court's subject matter jurisdiction ultimately extends to each party appearing before the court, because "[t]he parties cannot stipulate to diversity jurisdiction[.]" *Megalomedia*, 115 F.4th at 659. Further, the Court has an independent duty to determine jurisdiction sua sponte. *MidCap Media Fin., L.L.C. v. Pathway Data Inc*, 929 F.3d 310, 313 (5th Cir. 2019) ("We have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States."); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

For the controversy to be "between citizens of different states" under 28 U.S.C. § 1332(a)(1), "all persons on one side of the controversy must be citizens of different states than all persons on the other side." *MidCap*, 929 F.3d at 313. Generally, diversity subject matter

jurisdiction depends on the citizenship of the parties at the time the lawsuit was initiated. *See Grupo Dataflux v. Atlas Global Group, L.P*, 541 U.S. 567, 574–75 (2004).

A natural person's state of citizenship is that in which they both reside and intend to remain or keep their home. *MidCap*, 929 F.3d at 313. When proceeding as the legal representative of an estate, a party's state of citizenship is that of the decedent. 28 U.S.C. § 1332(c)(2). A corporation, by contrast, "is a citizen of every State and foreign state by which it has been incorporated *and* of the State or foreign state where it has its principal place of business." *MidCap*, 929 F.3d at 314 (quoting 28 U.S.C. § 1332(c)(1)) (emphasis added). A limited liability company is a member of every state in which any of its members is a citizen. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008).

Even if the controversy is between citizens of different states, the amount in dispute must exceed $75,000.00 before the Court can exercise subject matter jurisdiction. 28 U.S.C. § 1332(a). If a plaintiff has claimed a sum in good faith, that amount is what the Court will use to assess jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

Plaintiff has certified that, both individually and in her capacity as administratrix or representative of the Estate of Noah Leyman, she is a citizen of Georgia. (ECF 180). Intervenor Plaintiffs allege that they are both citizens of New Jersey. (ECF 79 at 1–2). Accordingly, to maintain diversity jurisdiction, all Defendants must be citizens of states other than Georgia and New Jersey.

Plaintiff alleges that the three individual Timur Defendants are each a citizen of Ohio. (ECF 80 at 10). Plaintiff further alleges that Timur Trucking, LLC has only one member, Defendant Adilov, and is therefore also a citizen of Ohio. (*Id.* at 9).

Amazon has certified its citizenship as follows: Defendants Amazon Logistics, Inc., Amazon Web Services, Inc., Amazon.com Sales, Inc., and Amazon.com, Inc. are all Delaware

corporations with their principal places of business in Washington. (ECF 169 at 3–4). Defendant Amazon Logistics, LLC has two members, both of whom are natural persons domiciled in the State of Washington. (*Id.* at 3). Finally, the sole member of Amazon.com Services, LLC is Defendant Amazon.com Sales, Inc. (ECF 109 at 3). Accordingly, Amazon has citizenship in both Delaware and Washington.

Regarding the amount in controversy, Plaintiff and Intervenor Plaintiffs have each claimed multiple categories of damages "in a sum over $75,000[.]" (ECF 79 at 33, ECF 80 at 36). Though this amount was likely pled with the statutory jurisdictional threshold in mind, it is not an unreasonable estimation of the damages implicated by this wrongful death case, and was not asserted in bad faith. The Court notes that Defendants have not challenged the jurisdiction of the Court for inadequate amount in controversy.

Because Plaintiffs are citizens of Georgia and New Jersey, and Defendants are citizens of Ohio, Delaware, and Washington, there is complete diversity between the parties. Because there is complete diversity between the parties and the amount in controversy is greater than $75,000.00, the Court has subject matter jurisdiction to issue this Order.

**<u>The parties are advised that this finding is applicable only to this Order, and does not relieve any party of its burden to invoke the subject matter jurisdiction of this Court.</u>** Particularly, parties are reminded that, once discovery has closed and the case has reached the summary judgment stage, the burden to show that this Court has subject matter jurisdiction will escalate accordingly. *Megalomedia*, 115 F.4th at 659; (*see* ECF 124 at 6).

### III.    APPLICABLE LAW

The sole issue in dispute—whether Amazon should be compelled to produce its complete insurance tower without confidentiality protections—is addressed by multiple legal sources,

including the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the prior Orders of this Court.

A. The Federal Rules

Parties in most civil suits[4] are required to disclose at the outset of the suit, without waiting for a discovery request, "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." FED. R. CIV. P. 26(a)(1)(A)(iv).[5] This and the other mandatory initial disclosures must be made very early in the case, usually within the first three months after the suit is initiated. *See id.* at 26(a)(1)(D).[6] The initial disclosure requirements can be modified, however, by stipulation of the parties or by court order. *Id.* at 26(a)(1)(A); *accord id.* at 26(a)(1)(C).

The overall scope of discovery, which generally encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[,]" can also be "otherwise limited by court order[.]" *Id.* at 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Even when information is discoverable, courts may, "for good cause, issue [protective orders] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring

---

[4] Certain proceedings are exempt from mandatory initial disclosures; no exemption is applicable to this case. *See* FED. R. CIV. P. 26(a)(1)(B).

[5] When the mandatory disclosure of insurance policies was added to the Federal Rules of Civil Procedure, it was controversial. *See* FED. R. CIV. P. 26 advisory committee's note to 1970 amendment ("Both cases and commentators are sharply in conflict on the question whether defendant's liability insurance coverage is subject to discovery in the usual situation . . . The amendment resolves this issue in favor of disclosure.").

[6] Rule 26(a)(1)(D) requires initial disclosures to be made on or before the fourteenth day after the parties' discovery planning conference, which itself must occur at least twenty-one days before a scheduling order is due. FED. R. CIV. P. 26(a)(1)(D) *and* 26(f)(1). Absent good cause for delay, a scheduling order is due in every case by the earlier of sixty days after the first defendant appearance or ninety days after the first defendant is successfully served. *Id.* at 16(b)(2).

that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G).

The "good cause" required for a protective order can be satisfied upon a particular factual showing of the harm to be avoided. *See* FED. R. CIV. P. 26(c)(1); *see also In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). That showing is necessary because "[p]roviding public access to judicial records is the duty and responsibility of the Judicial Branch." *Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (quoting *In re Leopold*, 946 F.3d 1121, 1123 (D.C. Cir. 2020)). The standard is more lenient for materials exchanged in discovery than it is for materials filed with a court, but "[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 551 (N.D. Tex. 1984) (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)); *accord Le*, 990 F.3d at 418–19.

Information might be undiscoverable or warrant a protective order if it is covered by a privilege. Privilege is generally determined by the common law, except that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. In Texas state law, trade secrets are one category of privileged information. TEX. R. EVID. 507(a). Texas state courts that "order[ ] a person to disclose a trade secret . . . must take any protective measure required by the interests of the privilege holder and the parties and to further justice." *Id.* at 507(c).

Finally, all questions of discoverability notwithstanding, the Federal Rules usually prohibit courts from admitting a party's liability insurance policies into evidence. FED. R. EVID. 411. There are exceptions, such as when a policy "prov[es] a witness's bias or prejudice or prov[es] agency, ownership, or control." *Id.* A major reason for this rule is to avoid prejudicing juries with the

knowledge of the existence or amount of liability coverage. *See id.*, advisory committee's note to the proposed rules (1975).

### B. This Court's Orders

At the outset of this case, the undersigned issued an Order to Submit Joint Proposed Scheduling Order and Setting Rule 16 Scheduling Conference. (ECF 43). That order set deadlines for the parties' discovery planning conference and for a joint report that, among other things, was required to include "the parties views and proposals on each of [six different] matters listed in" the Federal Rules of Civil Procedure. (*Id.* at 3). Relevantly, those six matters include "what changes should be made in the timing, form, or requirement for [mandatory initial] disclosures[,]" "any issues about claims of privilege," and "what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed[.]" FED. R. CIV. P. 26(f)(3)(A), 26(f)(3)(D)–(E).

The Court's Order also required parties to indicate when mandatory initial disclosures had been or would be made and required that,

> If, during the Rule 26(f) conference process, a party objects that initial disclosures are not appropriate and states the objection in the Joint Proposed Scheduling Order . . . the party must file a separate letter with the proposed order that alerts the Court to the fact that the objection has been made.

(ECF 43 at 3–4) (citing FED. R. CIV. P. 26(a)(1)(C)).

In the report, the parties stipulated to delay mandatory initial disclosures until after the initial scheduling conference before the undersigned. (*Id.* at 9; *see also* ECF 67 (Electronic Minute Entry for Scheduling Conference)). Amazon did not file a separate letter objecting to initial disclosures, but the joint report did state in multiple places:

- "The parties will confer regarding an Agreed Protective Order for the Court's consideration[,]"

- "The parties request that the Court enter an Agreed Protective Order prior to the parties' disclosure of documents and materials in this matter[,]" and,

- "The parties request that the Court enter an Agreed Protective Order prior to the parties' requirement to disclose documents and materials in this matter."

(ECF 65 at 9–11).[7]

Accordingly, the parties moved for an Agreed Protective Order, which the Court issued, with minor modifications, on March 19, 2025. (ECF 120 (Protective Order); *see also* ECF 119 (Order Granting Motion for Entry of Agreed Protective Order)). That Protective Order "cover[s] all documents, responses to discovery requests . . . and any other materials which may be subject to discovery . . . produced in the course of discovery by" Amazon. (ECF 120 at 1). It provides for such materials to be designated either "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" and limits disclosure of the materials according to their designation. (*Id.* at 1–2).

The Protective Order limits the documents that can be protected under either category, most relevantly by providing that a document may be designated "CONFIDENTIAL" if:

> The document is comprised of [sic] trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor . . . or [t]he document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information.

(*Id.* at 3).[8]

---

[7] The parties later submitted an amended Joint Proposed Scheduling Order in which they revised their proposed scheduling deadlines; the revised report did not (and was not required to) amend or restate the information relevant to this issue. (*See* ECF 68).

[8] Though the Court made minor edits to the version of the protective order submitted by the parties (*see* ECF 119 at 3), the final version of the quoted clause is identical to the version drafted by the parties. (*See* ECF 118-2 at 3).

If challenged, the burden "of proving the necessity of a 'CONFIDENTIAL' or 'ATTORNEYS' EYES ONLY' designation remains with the designating party." (*Id.* at 11). Even when challenged, however, a designated document is covered by the Protective Order's disclosure limitations until the designating party withdraws the designation or waives it by failure to respond to a challenge, or until the Court rules that the document should not be protected. (*Id.* at 11).

## IV. ANALYSIS

Plaintiffs argue that disclosure of the full tower is mandatory, Amazon has waived the right to assert the confidentiality of their insurance tower, the tower is non-confidential as a matter of law, and public policy weighs in favor of non-confidential disclosure. (ECF 140 at 6–18).[9] Amazon responds that the tower is a confidential trade secret, the confidentiality of which has not been waived, and that neither case law nor public policy justify mandatory non-confidential disclosure. (ECF 148 at 4–11). Each party advanced their respective position through oral argument before the undersigned on September 18, 2025 (*see* ECF 161 (Transcript)) and on October 2, 2025 (*see* ECF 165 (Minute Entry)).

### A. Amazon's Insurance Tower is Discoverable

Amazon properly concedes that its complete tower of insurance policies is discoverable. (ECF 148 at 9). Indeed, because the Court so ordered to prevent this discovery dispute from stalling litigation (*see* ECF 128), Amazon has already produced the complete tower with an

---

[9] Plaintiffs' Brief (ECF 140) and Amazon's Reply (ECF 148) each include internal page numbers that begin at 1 after the title pages and tables of contents and authorities. The Court's electronic case filing ("ECF") system appends page numbers to every document filed with the Court, and these automatically-generated page numbers begin at 1 on the first page of the filing, which is usually a title page. The ECF page numbers usually appear in blue text a half-inch from the top margin of any Court record when it is accessed through ECF or through the Public Access to Court Electronic Records ("PACER") system. Due to the title pages and tables, parties' Briefs' internal page numbering does not match the ECF page numbering; citations in this Order are to the ECF page numbers.

"ATTORNEYS' EYES ONLY" designation. (ECF 148 at 4).[10] Further, Amazon has agreed to produce the tower under the less-restrictive "CONFIDENTIAL" designation. (*Id.* at 11). Accordingly, the issue of discoverability merits only brief further discussion here.

As noted above, it was once controversial to suggest that insurance policies were discoverable in litigation where they had no relevance to the dispute beyond confirming a party's ability to satisfy a judgment. (*Supra* n.5). Much of the case law cited by Plaintiffs arose out of that controversy. *E.g.*, *Maddox v. Grauman,* 265 S.W.2d 939, 942 (Ky. 1954) ("An insurance contract is no longer a secret, private, confidential arrangement between the insurance carrier and the individual but it is an agreement that embraces those whose person or property may be injured by the negligent act of the insured."); *McNelley v. Perry*, 18 F.R.D. 360, 361 (E.D. Tenn. 1955) ("[T]he Federal Rules of Civil Procedure should be liberally construed to enable the litigants to obtain all information necessary[.]"); *People ex rel. Terry v. Fisher*, 145 N.E.2d 588, 592-93 (Ill. 1957) (ruling for the first time in Illinois law that defendants can be compelled to produce insurance documents); *Superior Ins. Co. v. Superior Court*, 235 P.2d 833, 835 (Cal. 1951) (establishing under California law that insurance policies are discoverable); *and Vetter v. Lovett*, 44 F.R.D. 465, 466 (W.D. Tex. 1968) (requiring disclosure of insurance policy limits prior to their inclusion in the mandatory initial disclosures).

To the extent that controversy has been resolved by amendment of the rules, these cases have been superseded by statute. 28 U.S.C. § 2072(b). It is now mandatory for every party in nearly every civil suit to disclose "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments

---

[10] The Court acknowledges Plaintiffs' concern that Amazon may have refrained from disclosing some portion of the tower. (*See* ECF 161 at 4–7). Counsel for Amazon has twice represented to the Court that the full tower has been produced. (ECF 148 at 4 *and* ECF 161 at 9).

made to satisfy the judgment." FED. R. CIV. P. 26(a)(1)(A)(iv). The requirement is to disclose the insurance policy or policies in full, regardless of any party's anticipatory valuation of the case. *Regalado v. Techtronic Indus. N. Am., Inc.*, No. 3:13-cv-4267-L, 2015 U.S. Dist. LEXIS 177983, 2015 WL 10818616 (N.D. Tx. Feb. 24, 2015).

Accordingly, the issue before the Court is limited to whether the insurance tower is eligible for confidentiality protections.

### B.    Amazon Has Not Waived Confidentiality

Amazon has asserted the confidentiality of its insurance tower from the earliest stages of this litigation. As noted above, the joint report filed by the parties in advance of the pretrial scheduling order in this case stated in three different places that the parties intended to make discovery subject to a protective order for confidentiality. (ECF 65 at 9–11). Thus, the Court agrees with Amazon that it has not waived the confidentiality of its complete insurance tower.

Plaintiffs' main argument to the contrary is grounded in notes taken by Plaintiffs' counsel during attorney conferences between the parties and then circulated to Defendants' counsel for comment. (*See* ECF 140 at 7). These notes indicate that on October 31, 2024, counsel for Amazon indicated that she would confer with her client regarding the confidentiality of the insurance tower and possible redactions to it. (ECF 141 at 9). Then, on December 3, 2024, that attorney:

> said that Amazon's position is that the insurance policies generally are not confidential business documents or trade secrets, but rather they want to declare them confidential for this litigation only and that we cannot share them[. Amazon's counsel] . . . advised if there are unique qualities or structuring of the tower, then policies may fall into a different 'confidential' designation[.]

(*Id.*). Contrary to Plaintiffs' characterization, these notes do not indicate waiver of confidentiality. They in fact confirm that Amazon has, from the very earliest stages of this case, even before its attorneys fully understood why, maintained that its complete insurance policy is confidential and that its disclosure should be restricted for use in this litigation only.

C.    Amazon's Insurance Tower is Covered by the Protective Order

In keeping with Amazon's consistent position on the matter, as noted above, the Court granted an agreed motion for protective order in this case. (ECF 119). In doing so, the Court found good cause for restricting public access to discovery produced in this case because protection was limited to "those documents reviewed by a licensed attorney who has determined in good faith that they fall within certain categories, such as . . . trade [secrets] or commercial information that is not [publicly] known and is of technical [or] commercial advantage to its possessor." (*Id.* at 3) (internal quotes omitted).

Accordingly, the Protective Order, by its own terms, allows documents falling into that second category to be marked "CONFIDENTIAL." (ECF 120 at 3). In fact, this section of the Protective Order is unique in invoking the provision of Rule 26, mentioned above, that allows Courts to enter protective orders "requiring that . . . confidential . . . commercial information not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G); (*see* ECF 120 at 3). No other document category in the Protective Order cites to the Rules in this way. (ECF 120 at 3–5).

As a result, the Court need not determine whether Amazon's insurance tower amounts to a trade secret under Texas or any other law.[11] If the policies are commercial information, if they are

---

[11] Both sides of this dispute rely on Texas state law in their arguments pertaining to whether information is privileged as a trade secret. (ECF 140 at 17; ECF 148 at 10); *accord Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 685 (N.D. Tex. 2013) (Fitzwater, J.) (citing FED. R. EVID. 501). Federal Courts presiding in state-law tort cases by diversity jurisdiction generally apply the conflicts of law rules of the State in which they sit. *E.g.*, *Denman By & Through Denman v. Snapper Div.*, 131 F.3d 546, 548 (5th Cir. 1998) (collecting cases). Texas conflicts of law rules provide that the burden to show a conflict of law calling for the application of the law of a foreign jurisdiction is on the parties, and that in the absence of such a showing, courts will presume that Texas law applies. *E.g.*, *Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 (Tex. 2008). "Under Texas law, a trade secret may consist of any formula, pattern, device, or compilation of information that is used in one's business and which gives one an opportunity to obtain an advantage over competitors who do not know or use it." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). For information to qualify as a trade secret, effort must have been made to keep it secret. *Id.* at 652.

not publicly known, and if they are of technical or commercial advantage to their possessor, they are eligible for a CONFIDENTIAL designation under this Court's Protective Order, which is expressly authorized by the Federal Rules of Civil Procedure.

The insurance tower is "commercial" in multiple senses of the word. It relates to and involves the selling of goods and services for profit, both regarding Amazon's own commercial activity and to the commercial provision of liability insurance to Amazon. *See Commercial*, Black's Law Dictionary (12th ed. 2024). The insurance policies are also information resulting from business activities, employed in trade, and made for sale. *See id.* Thus, the insurance tower is "commercial information" within the meaning of the Protective Order.

The evidence submitted to the Court also indicates that the insurance tower is not publicly known. Though Plaintiffs indicate that Amazon's first layer of insurance coverage has been produced more than once without confidentiality protections (ECF 140 at 13), Plaintiffs have not shown the same for the rest of Amazon's insurance tower.

On this issue, the parties focused particularly on a lawsuit in the Travis County, Texas state District Court, *Velez v. Amazon.com, Inc.*, No. D-1-GN-22-664. Plaintiffs submitted an order from that court denying a motion by Amazon for reconsideration of an order withholding confidentiality protection from its insurance policies. (ECF 141 at 33). A petition for writ of mandamus on the issue was denied by the state appellate court. *See In re Amazon.com, Inc.*, 2024 WL 3056631 (Tex. App.—Austin June 20, 2024, no pet. h.); (*see also* ECF 141 at 34).

In oral argument on the instant motion, however, counsel for Amazon indicated that the plaintiffs in *Velez* subsequently agreed to withdraw their challenge to the confidentiality of the insurance tower, resulting in a reversal of the court orders in question. (ECF 161 at 13–14, 22). Amazon submitted a copy of the state trial court's order granting an agreed motion by the parties to set aside its earlier order compelling production. (ECF 158-5).

The Court notes that, if Plaintiffs were able to obtain a copy of the insurance policies from the public sector, that fact alone would preclude protection of the tower under the Protective Order. (ECF 120 at 4) ("Information or documents which are available in the public sector may not be designated as "CONFIDENTIAL."). But it has not been shown that the insurance polices are, in fact, publicly available.

Finally, the insurance tower "is of . . . commercial advantage to its possessor," whether that possessor be Amazon, Plaintiffs and their attorneys, or a third party. Amazon has argued that the policies, as bespoke risk management assets in which Amazon has invested significant resources, give them a competitive advantage that would be destroyed by public disclosure. (ECF 148 at 8, 11; ECF 161 at 25–26). To support these arguments, Amazon submitted the Unsworn Declaration of Max Bunge, who works "as a Senior Manager of Corporate Risk & Insurance in Amazon's Global Risk Management & Claims group." (ECF 154 at 4).

Similarly, possession of the complete tower by Plaintiffs and their attorneys, whether with or without a confidentiality restriction, provides a commercial advantage. Amazon has pointed to Plaintiffs' counsel's marketable expertise in litigation against Amazon. (ECF 129 at 5–6). Plaintiffs correctly respond that this, in itself, is not a reason to restrict disclosure of information; Plaintiffs' attorneys are permitted to excel in their practice. (*See* ECF 140 at 14). However, it does provide an example of the commercial advantage afforded Plaintiffs and their counsel by possession of the full insurance tower.

Accordingly, the complete tower of insurance policies is commercial information that is not publicly known and is of commercial advantage to its possessor. Thus, it is eligible for designation as "CONFIDENTIAL" under the terms of this Court's Protective Order. (ECF 120 at 3).

### D.  No Modification of the Protective Order is Necessary

Though the Court has found the insurance tower to be covered by the Protective Order, the Court could, for good cause and on just terms, modify that Order to require unrestricted disclosure. FED. R. CIV. P. 26(c)(2). The balance of equities does not favor such a decision in this case.

Plaintiffs argue that public disclosure is necessary to achieve the purpose of Rule 26(a)(1) mandatory initial disclosures by "help[ing] ensure[ ] all litigants know the available coverages to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." (ECF 140 at 18). Amazon responds that this purpose is achieved "upon a potential litigant filing suit[,] at which time the policies are mandatorily disclosed." (ECF 148 at 8).

The weight of Amazon's responsive argument is undercut somewhat by its own behavior in this litigation to date. Though this case was initially filed on December 20, 2023 (ECF 1), and though a Protective Order was issued to address Amazon's confidentiality concerns on March 19, 2025 (ECF 120), Amazon did not produce its full insurance tower to Plaintiffs until July 18, 2025. (ECF 148 at 4). The Court acknowledges Amazon's explanation that this delay was "due to an unexpected medical leave of supervising defense counsel[.]" (ECF 148 at 4). The Court further acknowledges that, though Amazon later abandoned the argument, its original position was that it did not need to disclose "excess policies . . . for an amount greater than would be applicable to a judgment in this case." (ECF 129 at 4) (citing three unpublished orders from other District Courts). For these reasons, the Court sustains its earlier finding Amazon's conduct does not rise to the sanctionable level. (*See* ECF 135 at 1–2). However, the history of this case does demonstrate how, even after filing suit, and even with the promise of mandatory initial disclosures, a litigant might struggle to obtain the full extent of insurance coverage information to which they are entitled from an adverse party.

This Court's power to issue equitable relief, however, is limited to the parties in the suit before the Court. *Trump v. Casa, Inc.*, 606 U.S. 831, 841–42 (2025). There is no inequity to remedy for the parties in this case; Plaintiffs' attorneys have the requested information, and, pursuant to this Order's redesignation of that information from "ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," Plaintiffs themselves will also have access to it. Accordingly, the Court does not find Plaintiff's public policy argument presents good cause to modify the Protective Order or otherwise compel public disclosure in this case.

## V.   CONCLUSION

In summary, because the complete tower of Amazon's layered insurance policies is commercial information that is not publicly known and is of commercial advantage to its possessor, it is eligible for protection under this Court's Protective Order. Because Amazon has conceded that the full tower must be produced and has agreed to the less-restrictive designation, it is ORDERED that the complete and unredacted tower of Amazon's insurance policies be redesignated "CONFIDENTIAL." Plaintiffs' Motion to Compel (ECF 139) is otherwise DENIED.

IT IS SO ORDERED.

ENTERED October 31, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE