# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| **JURNEE SCOTT LEYMAN Individually, and as Administrix of the ESTATE OF NOAH M. LEYMAN, Deceased,**<br>**Plaintiff,**<br><br>**And**<br><br>**MICHAEL LEYMAN *and* ADRIANE LEYMAN,**<br>**Intervenor Plaintiffs,**<br><br>**v.**<br><br>**AMAZON LOGISTICS, INC. et al.,**<br>**Defendants.** | **Case No. 2:24-cv-00129-Z-BR** |

**AMAZON DEFENDANTS' RESPONSES AND OBJECTIONS TO INTERVENOR PLAINTIFFS' NOTICE OF TAKING VIDEOTAPED DEPOSITION OF DEFENDANTS AMAZON LOGISTICS, INC., AMAZON LOGISTICS, LLC, AMAZON.COM, INC., AMAZON.COM SALES, INC., AMAZON.COM SERVICES, LLC AND AMAZON WEB SERVICES, INC. PURSUANT TO FRCP 30(b)(6)**

TO: Intervening Plaintiffs Michael and Adriane Leyman, by and through their counsel, R. Keith Weber, Jr., 2 Riverway, Suite 1770, Houston, TX 77056; Jay R. Vaughn, Hendy Johnson Vaughn, PSC, 2380 Grandview Dr., Ft. Mitchell, KY 41017; and John T. Smithee, David Russell, Smithee & Russell LLP, 320 S. Polk St., Suite 920, Amarillo, TX 79101

**COMES NOW** Defendants Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC, and Amazon

Web Services, Inc. ("Defendants") make the following responses and/or objections to Intervening Plaintiff's Request for Production.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

**Defendants object to definition 'H' to the extent that as defined, the terms "Amazon Entities" or "Amazon Entity" this term is so overbroad, ambiguous, and capable of more than one meaningful construction, and expansive as to refer to any Amazon entity ever organized, whether or not the entity was involved in this suit.**

**Defendants further object to definition 'K' to the extent that, as Plaintiff defines it, the term "Document" is so overbroad, ambiguous, capable of more than one meaningful construction, and expansive as to refer to material which are not actual documents. It also encompasses materials which are subject to the attorney client and work product privileges, and materials which defendant does not have in its possession, as that is legally defined.**

**Defendants further object to definition 'M' to the extent that as defined, the term "relating to" is so overbroad, ambiguous, capable of more than one meaningful construction, and expansive as to refer to materials which do not actually relate to the subject of the topic, so as to make the term "relating to" essentially meaningless in this notice.**

**Defendants further object to definition 'N' to the extent that as defined, "including" is so overbroad, ambiguous, capable of more than one meaningful construction, and expansive as to render the term meaningless in this notice.**

**OBJECTIONS AND RESPONSES TO TOPICS AND MATTERS OF INQUIRY**

**TOPIC I:** How Amazon prioritizes motor carrier safety and the safe transportation of goods on our roadways in general, as it pertains to Timur, and regarding this load.

A. The safety culture at each of the AMAZON ENTITIES in 2022, 2023 and now, if different, including the safety programs, safety goals, key performance

indicators pertaining to safety, dashboards or data pertaining to safety, and pertaining to safe motor carriers, the safe operation of commercial vehicles, crash prevention, injuries or deaths.

B. The PPP of the AMAZON ENTITIES effective in 2023 relating to the safe transportation of goods on roadways in general for trucking companies and tractor trailers under the Relay program, any changes in the last 5 years, the reasons for the changes, and whether there were more or less stringent PPP for other types of companies delivering for the AMAZON ENTITIES under the Relay Program including without limitation those that applied to the vetting, selection, and monitoring of TIMUR, KUBAEV, the routing or dispatching of the Load, or to the Crash.

C. The internal memorandum, emails, agendas, messaging, Slack channels, white papers or other documents of the AMAZON ENTITIES relating to the safe transportation of goods on roadways effective in 2023 in general, as it pertains to the companies delivering for AMAZON ENTITIES under the Relay Program and/or that would apply to the vetting, selection, and monitoring of TIMUR, KUBAEV, the routing or dispatching of the Load, or to the Crash.

D. The key persons, software, and/or applications involved in developing the PPP, or drafting the internal memorandum, emails, agendas, messaging, Slack channels, white papers or other documents of the AMAZON ENTITIES relating to

the safe transportation of goods on roadways effective in 2023 in general, as it pertains to the companies delivering for AMAZON ENTITIES under the Relay Program and/or that would apply to the vetting, selection, and monitoring of TIMUR, KUBAEV, the routing or dispatching of the Load, or to the Crash.

E. Describe the manner, method, or minimum requirements for companies to apply for and be accepted and/or approved to transport cargo and packages for the AMAZON ENTITIES under the Relay Program in 2022, 2023, and now, if different, including what AMAZON ENTITY is responsible for the Relay Program, the identities of the people in charge of those decisions for the AMAZON ENTITIES; and the applicable PPP, internal memorandum, emails, agendas, white papers or other documents of the AMAZON ENTITIES effective in 2002 and 2023.

F. Describe the monitoring, scoring and performance standards, for companies approved to deliver or transport packages for the AMAZON ENTITIES under the Relay Program in 2022, 2023, and now, if different, including what AMAZON ENTITY is responsible for monitoring, scoring or tracking performance standards, the identities of the people in charge of those decisions for the AMAZON ENTITIES in 2022, 2023, and the PPP, internal memorandum, emails, agendas, white papers or other documents of the AMAZON ENTITIES effective in 2022 and 2023.

G. Any PPP, internal memorandum, emails, agendas, messaging, Slack

channels, white papers or other documents relating to the need for more companies or drivers to transport cargo or packages for AMAZON ENTITIES under the Relay Program in the last 5 years.

H. The PPP and complete vetting, investigation and qualification process for companies or drivers to become eligible to transport products for the AMAZON ENTITIES, at the time TIMUR was first considered by any AMAZON ENTITY, at the time of the Crash, and now; including the reasoning for the minimum insurance requirements for the carriers for AMAZON; why, AMAZON did not inquire about or confirm that a new entrant motor carrier had passed an FMCSA initial safety audit and, if not, to inquire about or confirm that the new entrant motor carrier actually had the FMCSA required safety management controls in place or at least had a drug, alcohol and driver qualification and safety training program; whether it would be safer and more reasonable for AMAZON to inquire whether or not new entrants have passed a safety audit; a complete description of the auditing, onboarding and monitoring of motor carriers for AMAZON; whether or not AMAZON knows what the FMCSA new entrant motor carrier safety audit includes; whether or not AMAZON knows what it means for a new entrant motor carrier to have appropriate safety management controls in place; whether or not AMAZON is aware of what the FMCSA defines as appropriate Safety Management Controls; whether or not AMAZON knows what the minimum requirements are to start a motor carrier with the FMCSA; what

criteria about safety or motor carriers was given to or received from RMIS; whether AMAZON uses new entrant motor carriers that have not passed a safety audit; and the timing and reasoning behind AMAZON's implemented changes to the PPP (e.g. adding a six months in business requirement for new entrant motor carriers).

I. Information and documentation necessary to understand how any AMAZON or other entity monitors or otherwise confirms companies or drivers continue to meet the safety and performance standards to remain eligible to transport products for the AMAZON ENTITIES under the Relay Program effective in 2023, and any changes in the last 5 years.

J. Information and documentation necessary to understand the Performance Metrics and any standards, data, scorecards, software, etc. used to track, evaluate, coach and ban companies or drivers for the AMAZON ENTITIES under the Relay Program effective in 2023, any changes in the last 5 years, and the reasons for the changes.

K. Each and every way all AMAZON ENTITIES have the ability to and do monitor approved transportation companies, their truck drivers, or the AMAZON loads or trailers they transport under the Relay Program in 2022, 2023 and now, if any different.

L. Whether the means or methods that any AMAZON ENTITY used to monitor transportation companies, their truck drivers, or the AMAZON loads or

trailers they transport under the Relay Program allows for or provides safety warnings, safety alerts, adverse incident alerts, or notices of crashes to the AMAZON ENTITIES in 2022, 2023 and now, if any different.

M. The details and frequency regarding how any third-party safety monitors used or utilized by any AMAZON ENTITY obtain data, information, monitor, evaluate or re-evaluate transportation companies, their truck drivers, or the AMAZON loads or trailers they transport under the Relay Program in 2022, 2023 and now, if any different.

N. The AMAZON ENTITIES' understanding of what is expected of commercial motor vehicle drivers in the exercise of reasonable care, in regard to defensive driving and the safe operation of a commercial motor vehicle on a public roadway as it pertains to the Relay Program in 2022, 2023 and now, if any different.

O. The AMAZON ENTITIES' analysis, awareness, consideration, discussion, reporting and understanding of what is expected of the competency and qualification of commercial motor vehicle drivers, including whether the driver can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records as it pertains to the Relay Program in 2022, 2023 and now, if any different; and any PPP, internal memorandum, emails, agendas, messaging, Slack channels, white papers or other

documents regarding same.

P. The AMAZON ENTITIES' analysis, awareness, consideration, discussion, reporting and understanding of loads designated as team loads being delivered or transported by solo drivers under the Relay Program in 2022, 2023 and now, if any different; and any PPP, internal memorandum, emails, agendas, messaging, Slack channels, white papers or other documents regarding same.

V. The AMAZON ENTITIES' understanding of its duties and responsibilities in connection with the retention of TIMUR and the placement of this Load with TIMUR, whether those duties and responsibilities were met and, if so, how they were met. This also includes the identification of and content of documents related to this subject.

**<u>OBJECTION AND RESPONSE TO TOPIC I:</u>**

**Defendant objections to the premise of much of Topic I in that it mischaracterizes the Relay program.**

**Defendant objects that Topic I is so unduly vague that it fails to identify topics with the reasonable particularity required of Fed. R. Civ. P. 12(b)(6) in order to properly prepare responsive testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."** ***Dennis v. United States*****, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017).**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state topics with reasonable particularity and; therefore, it is impossible for a witness to properly prepare testimony.**

**Defendant further objects that this topic has no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed. *Payne v. Raytheon Techs. Corp.*, 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic requests testimony on the Relay Program Policies in effect on June 4, 2023, the witness is designated to speak on that topic.**

**TOPIC II:** How the various Amazon entities interact with each other and with Amazon Sellers as it pertains to the safe transportation of goods on our roadways in general, as it pertains to TIMUR, and regarding this load.

A. Whether any AMAZON ENTITY in its dealings or contracts with sellers, vendors, suppliers, or other types of entities under the Relay Program, Amazon Fulfillment Services or Fulfillment by Amazon whose packages the AMAZON ENTITIES store, warehouse or deliver, makes representations or contractual promises relating to the transportation, movement, or delivery of goods, relating to safety, or the responsibility to deliver the goods to customers in 2022, 2023 and now, if any different.

B. Whether any AMAZON ENTITY in its dealings or contracts with sellers, vendors, suppliers, or other types of entities under the Relay Program, Amazon Fulfillment Services or Fulfillment by Amazon whose packages the AMAZON ENTITIES store, warehouse or deliver, charges in any way, bills for, or receives consideration for or relating to the transportation, movement, storage or delivery of goods to customers in 2022, 2023 and now, if any different.

C. The general roles and duties of the AMAZON ENTITIES as it pertains to Amazon's business model of identifying products and sellers, storing and/or warehousing those products, and transporting, moving, or delivering them to or from AMAZON facilities under the Relay Program, Amazon Fulfillment Services or Fulfillment by Amazon in 2022, 2023 and now, if any different.

D. Information and documents pertaining to Amazon Fulfillment Services or Fulfillment by Amazon.

E. The number of DOT "preventable accidents" (as defined by 49 C.F.R. § 385.3) that motor carriers and drivers hauling loads for the AMAZON ENTITIES under the Relay Program have had from 2020 through 2023.

F. The number of DOT "accidents" (as defined by 49 C.F.R. § 390.5) that that motor carriers and drivers hauling loads for the AMAZON ENTITIES under the Relay Program have had from 2020 through 2023.

G. The details of Amazon's Safety Monitor referenced on the "Amazon

Relay Program Policies Overview" including:

1. What is the role of Safety Monitors?
2. Which AMAZON ENTITIES do the Safety Monitors work for?
3. How many Safety Monitors are there?
4. Who is in charge of the Safety Monitors?
5. How many motor carriers is each Safety Monitor responsible for?;
6. The identity of the Safety Monitor(s) for TIMUR

H. Information and documents regarding the AMAZON ENTITIES' requirements for each company and driver to maintain paperwork on each load, including the contents and identity of the cargo, under the Relay Program in 2022, 2023 and now, if any different.

I. Information and documents regarding the AMAZON ENTITIES' requirements on accident reporting by companies or drivers involved in a crash while transporting goods or packages for the AMAZON ENTITIES under the Relay Program in 2022, 2023 and now, if any different.

**<u>OBJECTION AND RESPONSE TO TOPIC II:</u>**

**Defendant objections to the premise of much of Topic II in that it mischaracterizes the Relay program.**

**Defendant objects that Topic II is so unduly vague that it fails to identify topics with the reasonable particularity required of Fed. R. Civ. P. 12(b)(6) in order to properly prepare responsive testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended**

**to be questioned, and that are relevant to the issues in dispute." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017).**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state topics with reasonable particularity and; therefore, it is impossible for a witness to properly prepare testimony.**

**Defendant further objects that subsections within Topic II have no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed. Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on the Fulfillment by Amazon program the witness is designated to speak generally to that program. In addition, to the extent that Topic II seeks testimony on how motor carriers operate within the Relay Program and separate from that Program the witness is designated to speak to those topics.**

**TOPIC III**: TIMUR AND KUBAEV

A. The details regarding how, when, where, and by whom TIMUR and KUBAEV were first contacted or communicated with to do any business with the AMAZON ENTITIES.

B. The manner and method the AMAZON ENTITIES monitored TIMUR,

KUBAEV, or the AMAZON loads they transported.

C. Whether the means or methods that the AMAZON ENTITIES used to monitor TIMUR, KUBAEV, or the AMAZON loads they transported allowed for or provided safety warnings, safety alerts, adverse incident alerts, or notices of crashes to the AMAZON ENTITIES.

D. The persons, software or applications involved in or used to monitor TIMUR, KUBAEV, or the AMAZON loads they transported, for safety warnings, safety alerts, adverse incident alerts, or notices of crashes.

E. The communications between any Safety Monitors and TIMUR or KUBAEV.

F. The communications between the AMAZON ENTITIES and TIMUR or KUBAEV.

G. TIMUR and KUBAEV's complete files, online dashboards, online profiles, internal memorandum, emails, agendas, messaging, Slack channels, or other documents kept by any Amazon Safety Monitors as well as any AMAZON ENTITY.

H. For each package in the Trailer, the process to route or plan to obtain the goods, store them, and then to package them for delivery by TIMUR or KUBAEV.

I. Whether any AMAZON ENTITY has the right to, received, or has access to the electronic logging information or hours of service information for companies or drivers transporting goods for Amazon under the Relay Program, including TIMUR

or KUBAEV, in 2022, 2023 and now, if any different.

J. Any changes to TIMUR's or KUBAEV's access to AMAZON load boards for earlier or later access based on changes in their performance, metrics, scores or other reasons with AMAZON, and the reasons for those changes

K. The history of the business relationship between any AMAZON ENTITY and TIMUR, including but not limited to:

1. Describe the business relationship(s) and contractual agreement(s) generally in terms of services performed and consideration received;

2. When the relationship began, when it ended, and why;

3. Any interruptions in the business relationship(s) or contractual agreement(s), the times of such interruptions, and the reasons for such interruptions;

4. Any change in the business relationship(s) and contractual agreement(s) after this Crash, and if so, describe the changes and whether or not each change was related to the Crash in any way;

5. What business was conducted between TIMUR and any AMAZON ENTITY from 2022-2023;

6. How much business, in terms of both revenue and volume, was done between the TIMUR and any AMAZON ENTITY from 2022-2023; and

7. All contracts and agreements between TIMUR and any AMAZON ENTITY from 2022-2023, including but not limited to any such contracts or agreements that related to or applied to the transportation, storage or sale of the products being hauled in the Load.

8. TIMUR'S accident or incident history while working for any AMAZON ENTITY

9. Any violations of the Relay Carriers Terms of Service by TIMUR

10. All coaching detail for drivers provided to TIMUR by any AMAZON ENTITY, including Coaching on Driver for Carrier information

11. All banning of drivers of TIMUR by any AMAZON ENTITY, including Banning on Driver for Carrier information

12. The suspension of TIMUR as a Relay Carrier by any AMAZON ENTITY

13. Slack channel communication or messages regarding TIMUR by any AMAZON ENTITY

14. TIMUR'S grades and/or scores while performing work for the AMAZON ENTITIES for the following:

   a. Relay Performance Grade;

   b. Relay Performance Score;

   c. On Time Score;

d. Acceptance Score;

e. Disruption Free Score;

f. App Usage Score.

15. TIMUR'S BASIC scores while performing work for the AMAZON ENTITIES for the following:

a. Unsafe Driving;

b. Hours of Service (HOS) Compliance;

c. Vehicle Maintenance;

d. Controlled Substances/Alcohol;

e. Driver Fitness.

**OBJECTION AND RESPONSE TO TOPIC III:**

**Defendant objections to the premise of much of Topic III in that it mischaracterizes the Relay program.**

**Defendant objects that Topic III is so unduly vague that it fails to identify topics with the reasonable particularity required of Fed. R. Civ. P. 12(b)(6) in order to properly prepare responsive testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017).**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state topics with reasonable particularity, therefore, it is impossible for a witness to properly prepare testimony. "an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of**

**inquiry noticed, compliant designation is not feasible." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017).**

**Defendant further objects that subsections within this topic have no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed. Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on how motor carriers operate within the Relay Program, the witness is designated to speak generally to that topic. In addition, to the extent that Topic III seeks testimony on how Timur Trucking operated within the Relay Program the witness is designated to speak to that topic.**

**<u>TOPIC IV</u>:** Agreements, contracts and PPPs available to, regarding and/or provided to Relay Carriers, Relay drivers, TIMUR or KUBAEV

A. Amazon Relay Carrier Terms of Service

B. Amazon Relay Program Policies

C. Amazon Relay Accessorials Table

D. Amazon's Code of Business Conduct and Ethics

E. Relay Driver Guide

F. Relay Carrier User Guide

G. Relay App Quick Reference Flyer

H. Relay Performance Score and Grade Training Guide

I. VRID Weather Lookup Tool & Daily Weather Report

J. Relay Performance Metric: On Time Video

K. Payments Guide Video

L. Reporting Delays and Pending Investigations Guide

**OBJECTION AND RESPONSE TO TOPIC IV:**

**Defendant objections to the premise of much of Topic IV in that it mischaracterizes the agreements or other documents within the Relay program.**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state any aspect of the documents and programs listed in Topic IV with reasonable particularity, therefore, it is impossible for a witness to properly prepare testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017). "An overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."** ***Id.***

**Defendant further objects that subsections within this topic have no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be**

**narrowed. Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on how motor carriers operate within the Relay Program, the witness is designated to speak generally to that topic. In addition, to the extent that Topic IV seeks testimony on how Timur Trucking operated within the Relay Program the witness is designated to speak on that topic.**

**TOPIC V:** How AMAZON ENTITIES monitor, track and gather data on Relay Carriers, Relay drivers, TIMUR or KUBAEV

A. Location Data spreadsheets

B. Datavengers spreadsheets

C. Relay for Driver (R4D) spreadsheets

1. Alert
2. Destination
3. Location
4. Safety Events
5. Driver Assignments
6. Navigation Events
7. Speeding/Speeding Alerts
8. ODAS Assignments

9. Simba Task Execution

D. Freight Management Console (FMC) spreadsheets

1. Loads

2. Vehicle Disruptions

3. Vehicle Run Info

4. Vehicle Stop

E. Relay for Carrier (R4C) spreadsheets

1. Compliance

2. Carrier Execution

3. Performance Scores

4. VRID Loads

5. Driver Roster

F. Registry Monitoring Insurance Services (RMIS) spreadsheets

1. BASIC Scores

G. Aggregate Performance Metrics spreadsheets

H. Accident History spreadsheets

I. Trailer Telemetry spreadsheets

J. Trailer GPS spreadsheets

K. Carrier Compliance History spreadsheets

J. Vehicle Run Audit

K. Amazon Relay App

L. Other Amazon mobile applications, devices or platforms

M. What the AMAZON ENTITIES do with the data and information referenced above.

**<u>OBJECTION AND RESPONSE TO TOPIC V:</u>**

**Defendant objections to the premise of much of Topic V in that it mischaracterizes the agreements or other documents within the Relay program.**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state any aspect of the documents and programs listed in Topic V with reasonable particularity, therefore, it is impossible for a witness to properly prepare testimony on those documents. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017)."An overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.***

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1).**

**Defendant further objects that subsections within this topic have no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed. Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS**

**221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on how these documents are used within the Relay Program, the witness is designated to speak generally to that topic.**

**<u>TOPIC VI</u>:** The Load and the Crash

A. Who held title to, and who had control over, the products being hauled in the Load from the time of pickup, through the time of the Crash and through to the intended delivery location.

B. All persons or entities involved in the transportation of the products being hauled in the Load.

C. Who controlled, or had the right of control over, the movement of the products being hauled in the Load from origination to destination.

D. The extent that AMAZON ENTITIES had the right to or did control the movement of the products being hauled in the Load from origination to destination.

E. The itemization of all cargo for the Load including any conditions or requirements for certain types of cargo as contained in the bill of lading.

F. The Fulfillment fees charged by AMAZON ENTITIES for the products in the Load, what the fulfillment fees were for in this case, and whether the Fulfillment by Amazon ("FBA") program was used.

G. The information and documents pertaining to routing of the Load.

H. AMAZON ENTITIES understanding of how and why the Crash occurred, all causes of and contributing factors to the Crash, and how AMAZON ENTITIES reached these understandings.

I. Any and all information regarding, any cargo, injury, death, or property damage claims arising from the Crash, any payments or insurance claims made or paid, and any communications referencing, any cargo, injury, death, or property damage claims.

J. The preservation and collection of information pertaining to the Crash and production efforts in connection with this litigation arising from the Crash regarding relevant documents, photographs, reports, statements, electronic data and/or tangible things (hereafter in this topic collectively referred to as "document(s)"). This topic includes the following:

1. the measures taken by any AMAZON ENTITY or any independent contractors, agents, investigators or insurers acting on behalf of any AMAZON ENTITY to search for, identify, and collect documents related to the Crash, any cargo, injury, death, or property damage claims, defenses and discovery requests of the parties to this litigation;

2. all statements and photographs obtained by or on behalf of any AMAZON ENTITY relating to the Crash;

3. any preventability assessments and findings and all root cause analyses and reports relating to the Crash;

4. the measures taken by any AMAZON ENTITY or any independent contractors, agents, investigators or insurers acting on behalf of any AMAZON ENTITY to identify and collect the documents requested in this litigation;

5. the sources that any AMAZON ENTITY or any independent contractors, agents, investigators or insurers acting on behalf of any AMAZON ENTITY searched for purposes of collecting documents responsive to information or discovery requests, or used to craft responses to this deposition notice;

6. the custodians of the AMAZON ENTITIES documents regarding the Crash and any information or documents referenced in this deposition notice;

7. where and how the AMAZON ENTITIES stores the documents regarding the Crash and any information or documents referenced in this deposition notice;

8. how the AMAZON ENTITIES or any independent contractors, agents, investigators or insurers acting on behalf of the AMAZON ENTITIES identified the sources of the documents regarding the Crash and any

information or documents referenced in this deposition notice;

K. The date that and circumstances by which AMAZON ENTITIES first anticipated that this Crash may result in claims, being deposed, or being named as a party to this litigation and the factual basis for that belief.

L. The ARC Incident Packet and all communication for the Crash.

**OBJECTION AND RESPONSE TO TOPIC VI:**

**Defendant objects to the extent that Topic VI mischaracterizes the Relay Program and Program Policies. Further, Defendant objections to the premise of much of Topic VI in that it mischaracterizes the activities that occurred on or after June 4, 2023.**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state any aspect of the activities, documents and programs listed in Topic VI with reasonable particularity, therefore, it is impossible for a witness to properly prepare testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017). "An overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible."** ***Id.***

**To the extent that Topic VI would call for documents or issues that occurred after the anticipation of litigation the Defendant asserts all applicable privileges.**

**Defendant further objects to the extent that this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed.**

**Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on how the above listed documents are used within the Relay Program, the witness is designated to speak generally to that topic. Further, to the extent that Topic VI seeks information on the Fulfillment by Amazon program, the witness is designated to generally speak to that topic. Further, the witness is designated generally to speak to the topic of the collection of documents used in this litigation.**

**TOPIC VII:** All Amazon Applications and software utilized.

A. The user manuals, quick start guides, and functions of the Mentor App.

B. The user manuals, quick start guides, and functions of the Amazon Relay App.

C. The user manuals, quick start guides, and functions of any other App that the AMAZON ENTITIES required TIMUR or KUBAEV to utilize.

**OBJECTION AND RESPONSE TO TOPIC VII:**

**Defendant further objects that subsections within this topic have no bearing on either liability or damages. Therefore, this topic seeks irrelevant information that is not likely to lead to the discovery of admissible evidence and is likely made only for as a "fishing expedition" or for purposes of harassment. Broad-ranging topics seeking general information are not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1)) and should be narrowed. Payne v. Raytheon Techs. Corp., 2024 U.S. Dist. LEXIS 221016, at *6 (N.D. Tex. Dec. 6, 2024).**

**Defendant objections to the premise of much of Topic VII to the extent that it mischaracterizes these Applications.**

**Defendant further objects that this topic is so overbroad, expansive, lacking in reasonable limits on time and scope that it fails to state any aspect of the documents and programs listed in Topic VII with reasonable particularity, therefore, it is impossible for a witness to properly prepare testimony. "The requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."** ***Id.***

**"An overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." Dennis v. United States, 2017 U.S. Dist. LEXIS 174856, at *7 (N.D. Tex. Oct. 23, 2017).**

**Courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co., 322 F.R.D. 235, 242 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(c)(1)).**

**To the extent that this topic seeks testimony on how motor carriers and drivers are expect and do operate the above mentioned Applications the witnesses is designated to speak generally to those topics.**

**TOPIC VIII**: Miscellaneous Topics

A. Describe any and all insurance policies you or any other defendant had that had a coverage period that included the date of the Crash, whether or not the policy was still in effect on the date of the Crash and whether or not you contend the policy covers or may provide coverage for the damages sought by the Complaint, including any umbrella or excess coverage policies; and for each include the name of

the insurance company providing the coverage, the extent of each coverage provided in the policy or policies of insurance, including coverage for both personal injury and property damage, the policy number of each policy, whether the insurer has offered or provided a defense under a reservation of rights or otherwise contested or raised defenses or policy exclusions to providing coverage for this Crash or the claims asserted in this lawsuit.

B. Discovery responses by AMAZON ENTITIES

C. Facts supporting all Affirmative Defenses by AMAZON ENTITIES

**OBJECTION AND RESPONSE TO TOPIC VIII:**

**Defendant objects to the topics pertaining to insurance coverage to the extent that it calls for a legal interpretation of insurance contracts from a non-lawyer. This testimony has no bearing on either liability or damages. Therefore, this topic seeks irrelevant testimony that has no bearing on either liability or damages. All responsive documents were previously produced. Those documents speak for themselves.**

**Defendant objects to the topics pertaining to affirmative defenses to the extent that it calls for a legal opinion from a non-lawyer and is not allowed. A corporate representative cannot be required to give legal opinions or state the law. To the extent that this topic calls for the witness to testify to the understanding of Amazon as to the facts underlying those defenses the witnesses is designated to speak to that topic.**

Respectfully submitted,

**STEPTOE & JOHNSON, PLLC**

*/s/ Katherine Compton*

**Christopher C. White**
Texas State Bar Number 00794841
**Katherine Compton**
Texas State Bar Number 04652100
**Daniel A. Penn**
Texas State Bar Number 24131582
500 N. Akard Street, Suite 3200
Dallas, Texas 75201
Telephone: (945) 235-6802
chris.white@steptoe-johnson.com
katherine.compton@steptoe-johnson.com
daniel.penn@steptoe-johnson.com

***Attorneys for Amazon Logistics, Inc, Amazon Logistics, LLC, Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC and Amazon Web Services, Inc***

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2026, I electronically served the foregoing to all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ *Katherine Compton*
*Katherine Compton*