IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JURNEE SCOTT LEYMAN, *Individually and as Administratrix of the Estate of Noah M. Leyman, Deceased*, | § | |
| Plaintiff, | § | |
| and | § | |
| MICHAEL LEYMAN *and* ADRIANE LEYMAN, | § | |
| Intervenor Plaintiffs, | § | |
| v. | § | 2:24-cv-129-BR |
| AMAZON LOGISTICS, INC., AMAZON LOGISTICS, LLC, AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, TIMUR TRUCKING, LLC, FIRDAVS KUBAEV, *and* KAMILODDIN ADILOV, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER PARTIALLY GRANTING AMAZON DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT JOSEPH STIDHAM**

This diversity action arises from a motor vehicle accident that occurred on June 4, 2023, and resulted in the death of Noah M. Leyman—the Plaintiff's husband—and in injuries to Plaintiff. (ECF 80 at 1). Intervenor Plaintiffs are the decedent's surviving parents. (ECF 79 at 2). Defendants are Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com, Inc., and Amazon.com Services, LLC (collectively, the "Amazon Defendants"), as well as Timur Trucking, LLC, Firdavs Kubaev, and Kamiloddin Adilov (collectively, the "Timur Defendants"). The Timur Defendants

owned and operated the semi-truck that was involved in the accident, and the Amazon Defendants owned the trailer that the truck was hauling. (ECF 80 at 16).

Now before the Court is the Amazon Defendants' Motion to Exclude Plaintiff's Expert Joseph Stidham. (ECF 283). Having considered the parties' filings and the applicable law, for the following reasons, Amazon's Motion is DENIED.

## I. APPLICABLE LAW

Generally, witnesses in federal cases are only permitted to testify on matters of which they have personal knowledge. FED. R. EVID. 602. Such testimony can take the form of an opinion, but most of the time, among other restrictions, the opinion must not be "based on scientific, technical or other specialized knowledge[.]" *Id.* at 701(c). To offer an opinion[1] based on specialized knowledge—an "expert opinion"—certain standards must be met.

Those standards can be summarized under three headings: qualifications, relevance, and reliability. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). The first requires that the witness must be "qualified as an expert by knowledge, skill, experience, training, or education[.]" FED R. EVID. 702. Second, the trial court must find it "more likely than not that the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" *Id.* at 702(a). Finally, the expert opinion must be "based on sufficient facts or data; . . . [be] the product of reliable principles and methods; and . . . [must reflect] a reliable application of the principles and methods to the facts of the case." *Id.* at 702(b)–(d). The proponent of the evidence bears the burden of proof on all three matters. *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018) (Horan, J.).

[1] These rules also apply to factual testimony based on specialized knowledge—they are not restricted to opinions or conclusions. *See* FED. R. EVID. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion *or otherwise*[.]") (emphasis added). The Court refers to all testimony based on scientific, technical, or other specialized knowledge as "expert opinion" in the interest of simplicity.

A. Expert Witness Qualifications

Qualification is a threshold inquiry; a witness must be qualified as an expert to offer an expert opinion. FED. R. EVID. 702. The degree or magnitude of an expert's qualifications, however, will not bear on the admissibility of their opinions. *Williams v. Monitowoc Cranes, LLC*, 898 F.3d 607, 623–624 (5th Cir. 2018) ("Although an expert's qualifications may be less-than-sterling, she may still be certified.").

B. Expert Testimony Reliability

An expert opinion is only admissible if it is reliable. The rules break reliability into three inquiries: sufficiency of the underlying data, reliability of the principles and methods, and reliable application of those principles and methods. FED. R. EVID. 702(b)–(d). Together, these "assess[ ] whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight*, 482 F.3d at 352 (internal quotation marks omitted). "[C]ourts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation and internal quotation marks omitted).

The test for reliability is flexible, however. The specific factors listed above neither necessarily nor exclusively apply to all experts or in every case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The district court "has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Johnson*, 685 F.3d at 458–59 (quoting *Knight*, 482 F.3d at 354). Where technical or other specialized knowledge "might become the subject of expert testimony," the Supreme Court has

made it clear that "reliability concerns may focus upon personal knowledge or experience." *Kumho Tire*, 526 U.S. at 147, 150. Experts may "tie observations to conclusions through the use of general truths derived from specialized experience." *Id.* at 148.

C. Expert Opinion Foundations

An expert opinion can be based on "facts or data in the case that the expert has been made aware of or personally observed." *Id.* at 703 (emphasis added). Again, this is an exception from Rule 602's general requirement that witnesses limit testimony to their personal knowledge. *Id.* at 602 ("This rule does not apply to a witness's expert testimony under Rule 703."); *accord Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) ("[T]here is no requirement that an expert derive his opinion from 'firsthand knowledge or observation.'").

The facts or data on which the expert opinion is based do not need to be admissible as evidence themselves, provided they are the kind of facts and data on which "experts in the particular field would reasonably rely . . . in forming an opinion on the subject[.]" FED. R. EVID. 703. Even if the facts or data are themselves admissible, a witness does not need to testify about them before offering the expert opinion, though they may be required to testify about them under cross-examination. *Id.* at 705.

The Supreme Court has held that "nothing . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In other words, when the only reason to think an expert's conclusions are supported by their foundations is that they, themselves, say so, the Court may exclude the expert testimony as lacking a proper foundation. The proponent of expert testimony bears the burden to establish that the expert's conclusions are supported by "some objective, independent validation[.]" *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

D. Legal Conclusions

While an expert opinion "is not objectionable just because it embraces an ultimate issue," FED. R. EVID. 704(a), experts are not permitted to offer legal conclusions in their testimony. *See Estate of Sowell v. United States*, 198 F.3d 169, 171–172 (5th Cir. 1999); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). *Douglas v. Potter Cnty., Texas*, No. 2:24-CV-030-Z-BR, 2025 WL 824582 at *3 (N.D. Tex. Mar. 13, 2025) (holding that expert could not testify as to whether Defendant was deliberately indifferent or violated the Constitution).

The relevance inquiry of the *Daubert* analysis requires the trial court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "[A]llowing an expert to give his opinion on the legal issues to be drawn from the evidence both invades the court's providence and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 811 (N.D. Tex. 2013) ("Both opinions attribute legal significance to certain facts, which is not helpful to the trier of fact and must be excluded under Rule 702.").

E. The Court's Role

The landmark Supreme Court decision on expert witnesses is *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Applying an earlier version of the applicable rules, which have since been amended in part to adopt the principles of *Daubert* and its progeny, the Supreme Court emphasized the role of the trial judge in screening out irrelevant and unreliable testimony and evidence. *Id.* at 589; *accord* FED. R. EVID. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible.").

The Fifth Circuit has emphasized that this role cannot be abdicated by admitting opinions that lack a sufficient basis in facts or data, or that fail to reliably apply appropriate methods, pursuant to a mere "glance at the expert's credentials[.]" *Harris v. FedEx Corp. Servs.*, 92 F.4th

286, 303 (5th Cir. 2024) (quoting *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)). The inquiry demanded of the Court is a "flexible" one, however, and the trial court has "broad discretion" in performing it. *Daubert*, 509 U.S. at 594, *and Harris*, 92 F.4th at 303–04 (quoting *Adams v. Mem'l Hermann*, 973 F.3d 343, 352 (5th Cir. 2020)).

The burden is on the proponent of expert witness testimony to establish by a preponderance of the evidence that the testimony is admissible. *See Daubert*, 509 U.S. at 592 n.10. Importantly, the question of admissibility is not about whether the testimony is correct or true. That is a matter reserved for the factfinder at trial. *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) *and Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As such, questions of the weight carried by an expert opinion, or the relative degree of expertise possessed by a qualified witness, are not determinative when deciding the admissibility of an expert opinion. *See, e.g.*, *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1044–45 (N.D. Tex. 2022) (citing *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009)).

Moreover, "the rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). The adversary system thus still acts as the ultimate arbiter of truth. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. ANALYSIS

Joseph Stidham delivered an expert report[2] to Plaintiffs on February 20, 2026, and Plaintiffs produced it to the Amazon Defendants that same day. (ECF 283-1 at 3; ECF 283 at 5). According to his *curriculum vitae* (ECF 283-1 at 276–323), Stidham is a traffic collision reconstructionist who since 1998 has operated the independent firm, Stidham Reconstruction and Investigation (or "SRI"). (*Id.* at 278). Prior to 1998, he served for eight years in the Kentucky State Police, where he performed criminal and accident investigations, and for the last two of those eight years he was responsible for collision reconstruction. (*Id.* at 293). SRI has been a registered motor carrier since 2015 and Stidham has held a Class A commercial driver license since 2020. (*Id.* at 278).

Stidham's expert report, excluding the title and signature page, appendices, his CV, and his retention contract with Plaintiffs, is 260 pages analyzing the circumstances and causes of the subject accident. (*See id.* at 2–261). He analyzes not only the physical details of the collision (*e.g.*, *id.* at 34–42, 232–34), but also the background leading up to it (*e.g.*, *id.* at 99–102), and the relationship between the Amazon Defendants and the Timur Defendants and motor carriers in general (*e.g.*, *id.* at 150–51, 168–73). Stidham has not been deposed. (ECF 310 at 5; *accord* ECF 326 at 1–2).

The Amazon Defendants move the Court to exclude from Stidham's testimony the following opinions from his expert report:

> 18. Based on all the information previously discussed in this report, the collision between the Kubaev Freightliner and the Leyman Hyundai Sonata was a

[2] *See* FED. R. CIV. P. 26(a)(2)(B) (requiring a written report from expert witnesses).

> "preventable accident" on the part of Timur Trucking, LLC, Amazon, and Firdavs Kubaev.
>
> . . .
>
> Timur Trucking, LLC and Amazon (the owner of one of the vehicles and load that was involved in this collision) failed to act to prevent the collision when both Amazon and Timur Trucking, LLC had real-time load tracking, including geolocation, geo fencing, vehicle telemetry, real-time location systems, of the Kubaev Freightliner and/or Kubaev (the driver). And, if they had been monitoring their systems, specifically the Relay App, they would have known the Kubaev Freightliner was not being operated as required by the FMCSR's and state laws. Amazon documents AMZL 000080-81, AMZL 000041, AMZL 000134, AMZL 00084, and AMZL 000147 identifies that Amazon knew this was a team driver load. However, Amazon has only provided Relay App data for Kubaev.
>
> . . .
>
> 20. Timur Trucking, LLC, as the employer of Kubaev and Amazon, as the owner of one of the commercial motor vehicles in this collision, showed a willful, reckless, and conscious disregard for the safety of other motorists on the roadway when they allowed Kubaev, an unqualified driver, that was in severe violation of the hours of service, in violation of Texas Law, FMCSA regulations, CMV driving standards, and CMV Industry Standards, all of which are designed for public safety. If these laws and standards had been observed by Timur Trucking, LLC, Amazon, and Kubaev, the collision and the death to Leyman and injury to Scott would not have occurred.
>
> 21. Based on the available information, Amazon, [sic] had a vehicle involved in this collision and controlled the scheduling of loads transported on their behalf. Amazon tracked the drivers through their Relay App, Amazon provided the navigation for the load through their Relay App, Amazon set the arrival time to pick up the load through their Relay App, and Amazon set the delivery time for the load through their Relay App.

(*Id.* at 261–62; ECF 283 at 5).

The Amazon Defendants base their motion on the grounds that: (1) Stidham's expert opinions are legally conclusory restatements of Plaintiffs' claims; (2) his opinions amount to "*ipse dixit*," meaning that they lack a proper foundation; and (3) he is not qualified to opine on the Amazon Defendants' policies or the Amazon Relay app. (ECF 283 at 2).

A. Legal Conclusions

The instant motion argues that many of Stidham's opinions are inadmissible summary legal conclusions, such as that the Amazon Defendants "failed to act to prevent the collision[,]" that "the collision and the death to [Noah] Leyman and injury to [Plaintiff] would not have occurred" if the applicable "laws and standards had been observed" by the Amazon Defendants, and that the Amazon Defendants acted with "willful, reckless, and conscious disregard for the safety of other motorists on the roadway[.]" (*Id.* at 7) (quoting ECF 283-1 at 261–62); (*see also* ECF 322 at 6–7).

Plaintiffs rightly concede that Stidham's conclusion as to "willful, reckless, and conscious disregard" must be limited at trial. (ECF 310 at 8). That is an impermissible legal conclusion that will not "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert*, 509 U.S. at 591.

As for the other testimony challenged by the Amazon Defendants, Plaintiffs respond that Stidham grounds his "preventable accident" determination in the definition of that term established by Federal Motor Carrier Safety Administration Regulations (specifically 49 C.F.R. § 385.3) and by the standardized *Commercial Vehicle Accident Manual* published by the Department of Transportation's Federal Highway Administration. (ECF 310 at 6–7) (discussing Stidham's sources as listed in ECF 283-1 at 33). More generally, Plaintiffs argue that "qualified experts are permitted to offer opinion testimony as to industry standards or norms and whether they were followed in a particular case," and that testimony cannot be limited simply because it embraces an ultimate issue. (ECF 310 at 7).

The Court agrees with Plaintiffs; Stidham's testimony that the accident was preventable as defined by industry standards, and that compliance with industry standards by the Defendants would have in fact prevented it, constitutes admissible expert opinions, even if it embraces ultimate issues that the jury must determine. *See* FED. R. EVID. 704(a). Such testimony is likely to be helpful

to the jury when interpreting the facts, and it is for Defendants to convince the jury that Stidham is incorrect.

The Amazon Defendants, in their argument to the contrary, make much of the fact that Plaintiffs' pleadings reflect some of the same conclusions set forth in Stidham's report. (ECF 283 at 8). This argument is unavailing. The idea that the Defendants were required by industry standards to take certain actions, but did not do so, does not become an impermissible legal conclusion simply because it appears in a pleading.

Stidham may not testify that Defendants acted with "willful, reckless, and conscious disregard," but he may testify regarding Defendants' access to "real-time load tracking, including geolocation, geo fencing, vehicle telemetry, [and] real-time location systems" and what the applicable industry standards required them to do with that access. (*See* ECF 283 at 8) (quoting ECF 283-1 at 261). Such testimony does not usurp either the Court's role of providing legal instruction, nor the jury's role of ascertaining and attributing legal significance to the facts. *See* *Orthoflex*, 986 F. Supp. 2d at 811.

B. *Ipse Dixit*

Next, the instant motion argues that "Stidham's opinions regarding [Defendants'] ability to 'prevent' the accident or whether the accident 'would not have occurred' do not contain any support beyond Stidham simply saying it is so." (ECF 283 at 9). The Amazon Defendants refer to the same four paragraphs quoted above and object to them on the grounds that "Stidham offers no support for these opinions." (*Id.* at 10). In their reply, they elaborate on this argument by claiming that, to the extent Stidham invokes the Federal Highway Administration and American Trucking Associations guidelines or manuals, he does so only to support the opinions they elsewhere objected to as being legal conclusions. (ECF 322 at 8).

The Court has no difficulty, however, identifying the bridge that connects Stidham's data to his conclusions. As Plaintiffs accurately summarize, Stidham began with data from various sources, including the electronic logs produced by both vehicles involved in the collision, cellular location data, and internal documents produced by the Amazon Defendants in discovery. (*See* ECF 310 at 9; *see also* ECF 283-1 at 47–48, 98–100, 142–44, *and* 262). He draws conclusions from that data implicating violations of applicable standards, like that Defendant Kubaev, who was driving the semi-truck, violated driving time limitations. (*E.g.*, 283-1 at 227–231). Finally, he reviews evidence that the corporate Defendants had access to the same data, such as discovery documents confirming that the Amazon Defendants tracked the locations of drivers who were logged into the Amazon Relay App. (*E.g.*, *id.* at 247, 250, 252–53).

From this methodology, Stidham concludes that Defendants had the capacity to determine that standards were being violated, which is the substance of the objected-to paragraphs. (*See* ECF 283 at 9–10). He further opines that, had Defendants acted on this knowledge, they could have prevented the hazardous conditions that resulted from the violations, such as by preventing an over-exhausted driver from hauling a load overnight. (*E.g.*, ECF 283-1 at 236–46). The Amazon Defendants do not need to agree with these conclusions, and the Court is prohibited from evaluating their correctness, but they are not *ipse dixit*. They are admissible.

C. Qualifications

The Amazon Defendants argue that Stidham is unqualified to offer opinions on their policies or on the Amazon Relay App, because he has neither experience nor training in "logistics, shipping, brokering, or supply chain management." (ECF 283 at 10–11). Though Plaintiffs provide "undoubtedly-robust support for his qualifications as an expert in accident reconstruction," Amazon insists that his expertise is not applicable to the shipping, brokering, and motor carrier issues relevant to this case. (ECF 322 at 10–11).

This argument mischaracterizes Stidham's report. It does, as the Amazon Defendants point out, "contain[ ] twenty-nine pages outlining Amazon employee testimony regarding its policies" and "[a]nother six pages . . . dedicated to the Amazon Relay App." (ECF 283 at 10) (citing ECF 283-1 at 180–209, 247–53). These pages do not contain, however, expert witness testimony on the Amazon Defendants' internal policies or the Amazon Relay App. Instead, these pages outline the sources Stidham relies on to determine what data the Amazon Defendants could access.

Though the cited discovery documents discussing the Amazon Relay App are placed within the "Opinions and Conclusions" section of the report (ECF 283-1 at 234 *et seq.*), they are clearly present only to support his associated conclusion, which is that "Amazon sets the times for pickup and delivery of loads, and the Relay App provides the navigation of the load. The Relay App also tracks the driver that is logged into the Relay App." (*Id.* at 246). Similarly, Stidham elsewhere intersperses his conclusions with a partial document from the Department of Energy's Vehicle Technologies Office that purports to show the average operating speed of trucks on major routes. (*Id.* at 257). Stidham is neither an expert on Vehicle Technologies Office operations nor on the statistical analysis of aggregate vehicular speed data, but he includes the in-line reference to support his conclusion that Defendant Kubaev's speed was above average. (*Id.*).

## III. CONCLUSION

In summary, Stidham's expert opinions are not *ipse dixit* and are adequately supported by his qualifications, but they do at times include legal conclusions. Accordingly, the Amazon Defendants' motion (ECF 283) is PARTIALLY GRANTED in that the Court will prohibit Stidham from testifying as to legal conclusions at trial, and is otherwise DENIED.

IT IS SO ORDERED.

ENTERED August 7, 2026.

Lee Ann Reno

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE