**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **JURNEE SCOTT LEYMAN, Individually AND AS REPRESENTATIVE OF THE ESTATE OF NOAH LEYMAN, DECEASED,** | ) | |
| **Plaintiffs,** | ) | |
| **MICHAEL LEYMAN and ADRIANE LEYMAN** | ) | |
| **v.** | ) | **2:24-cv-00129-Z-BR** |
| **AMAZON LOGISTICS, INC., et al.** | ) | |
| **Defendants.** | ) | |

# PLAINTIFFS' RESPONSE IN OPPOSITION TO AMAZON DEFENDANTS' MOTION TO EXCLUDE EXPERT ALEXANDER SCOTT


**TURNBULL, MOAK & PENDERGRASS, LLC**
D. Brett Turnbull Texas Bar No.: 24117282
Drew Haskins Texas Bar No.: 24127397
Andrew Moak Texas Bar No.: 24145839
2501 20th Place South, Suite 425
Birmingham, AL 35223
Telephone: (205) 831-5040
Facsimile: (205) 848-6300
Email: bturnbull@turnbullfirm.com
Email : dhaskins@turnbullfirm.com
Email : amoak@turnbullfirm.com

ATTORNEYS FOR PLAINTIFFS

**Hendy Johnson Vaughn Emery PSC**
Jay R Vaughn
2380 Grandview Dr
Ft. Mitchell, KY 41017
859-578-4444
jvaughn@justicestartshere.com

**Weber Law Firm**
R. Keith Weber, Jr.
2 Riverway Suite 1770
Houston, TX 77056
281-369-4719
281-369-4718 (fax)
rw@gulfcoastfirm.com

ATTORNEYS FOR PLAINTIFFS AND PLAINTIFF-INTERVENORS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...……..….3

I. INTRODUCTION……………………………………………………….……….…4

II. LEGAL STANDARD…………………………………………………….……….5

III. ARGUMENT…………………………………………………………….……..6

A. Dr. Scott Properly Distinguishes Separate Operational and Vetting Duties Without Improper “Conflation” ................................................................6

B. Dr. Scott’s Onboarding and Retention Opinions Utilize Globally Recognized Transportation Safety Methodologies ....................................8

C. Dr. Scott’s Operational “Control” Opinion Follows Established Statutory and Common-Law Definitions ..............................................................11

D. Dr. Scott’s Rigorous Factual Foundation Stands in Stark Contrast to Jurisprudence Requiring Exclusion……………….….……...……..………13

IV. CONCLUSION……………………………………...………….….……..14

# TABLE OF AUTHORITIES

## Cases

*Bibbs v. Molson Coors Beverage Co., USA, LLC*, 699 F. Supp. 3d 509 (N.D. Tex.2023) .......... 13
*Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531 (5th Cir. 2013) .................................................. 6, 7, 8
*Daubert v. Merrill Dow Pharm. Inc.*, 509 U.S. 579 (1993) .................................................. 5, 6, 8
*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ................................................................ 13
*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) ............................................. 13
*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................................................ 6
*Mathis v. Exxon Corp.*, 302 F.3d 448 (5th Cir. 2002) ........................................................ 5
*Puga v. RCX Sols., Inc.*, 922 F.3d 285 (5th Cir. 2019) ...................................................... 10, 11, 13
*Valentin v. Huerta*, No. 5:20-CV-94, 2022 WL 21770376 (S.D. Tex. Mar. 31, 2022) ................... 9
*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) .................................................. 5, 6

## Rules

Fed. R. Evid. 702 ........................................................................................... 5, 6, 8, 14

**PLAINTIFFS' RESPONSE IN OPPOSITION TO AMAZON DEFENDANTS' MOTION TO EXCLUDE EXPERT ALEXANDER SCOTT**

Plaintiffs Jurnee Scott Leyman, individually and as Administrix of the Estate of Noah M. Leyman, Deceased, along with Intervening Plaintiffs, Michael and Adriane Leyman (collectively, "Plaintiffs") respectfully file this Response in Opposition to "Doc. 284 - 26.06.05 - Amazon Defendants' Motion to Exclude Plaintiffs' Expert Frank Alexander Scott". For the reasons set forth below, Plaintiffs request that this Court deny Defendants' Motion in its entirety.

## I. INTRODUCTION

This action arises from a fatal motor vehicle collision on June 4, 2023, on US 287 in Potter County, Texas. *See generally* ECF 79 and ECF 80. Firdavs Kubaev, operating a 2019 Freightliner tractor-trailer for Timur Trucking, LLC, was hauling a commercial cargo load and trailer owned by the Amazon Defendants. *Id.* After encountering a traffic diversion overseen by law enforcement, Kubaev failed to follow instructions to safely head northbound towards Amarillo, Texas. *Id.* Instead, Kubaev turned his commercial vehicle onto the wrong side of a divided highway, driving southbound directly into the oncoming northbound lanes of travel. *Id.* Traveling wrong-way in the left passing lane, Kubaev violently slammed the front of his commercial vehicle into a 2022 Hyundai Sonata driven by U.S. Army servicemember Noah Leyman, killing Mr. Leyman and causing severe injuries to passenger Jurnee Scott. *Id.*

Plaintiffs disclosed Frank Alexander Scott as a qualified commercial transportation professional, with core expertise in the fields of interstate transportation, logistics, supply chain management, and the functional boundaries of motor carrier, broker, and shipper operations. Additionally, his specialty focuses specifically on commercial fleet safety administration, motor carrier selection and retention protocols, and regulatory compliance under the Federal Motor Carrier Safety Regulations. Scott's Report and CV are attached hereto as **Exhibit A**.

Amazon now moves this Court to exclude Scott's testimony, based solely on opinions provided in his report. It is worth noting that Amazon has *not* deposed Scott as of the time of filing this Response.

In its Motion, Amazon fundamentally mischaracterizes transportation expert methodology and relies on boilerplate *ipse dixit* challenges to shield itself from its independent operational negligence. Because Dr. Scott's opinions are deeply tethered to specific, independently verifiable, and discoverable data, Amazon's *Daubert* challenge must be denied.

## II. LEGAL STANDARD

The admissibility of expert testimony is strictly governed by Federal Rule of Evidence 702. Following the clarifying amendments to Rule 702, the proponent must demonstrate to the Court by a preponderance of the evidence that the expert's specialized knowledge will assist the trier of fact, the testimony is based on sufficient facts or data, it is the product of reliable principles, and the expert has reliably applied those principles to the facts of the case. Fed. R. Evid. 702. Within the Fifth Circuit, the exclusion of expert testimony is recognized as "the exception rather than the rule". Fed. R. Evid. 702 advisory committee's note on 2000 amendments.

In its gatekeeping capacity under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court acts to shield the courtroom from unreliable, unscientific speculation, not to replace the traditional adversarial framework. As this Court has explicitly noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence". *Id*. at 596. Accordingly, the district court's "*Daubert* analysis should not supplant trial on the merits," *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citation omitted), and, generally speaking, issues regarding the bases and sources of an expert's opinion that affect the weight of an opinion rather

than the admissibility of the opinion "should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The reasoning behind this general rule is consistent with the Advisory Committee's Notes to Rule 702, which state:

> "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

The specific analytical factors outlined in *Daubert* (such as peer review, testing, and rate of error) are primarily structured for hard scientific models. The Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) expanded the *Daubert* framework to technical, experiential, or other specialized fields, holding that an expert may be qualified through specialized industry experience alone and may properly "tie observations to conclusions through the use of general truths derived from specialized experience." *Id.* at 148.

## III. ARGUMENT

### A. Dr. Scott Properly Distinguishes Separate Operational and Vetting Duties Without Improper "Conflation"

Amazon contends that Dr. Scott's opinions improperly conflate the separate duties of Amazon and the motor carrier, Timur Trucking, LLC, by pointing to post-accident violations assessed against Timur Trucking by the FMCSA. This argument is a carbon copy of the defects identified in *Brown v. Illinois Central Railroad*, where an expert failed to connect cited authorities to his conclusions.

Contrary to Amazon's arguments, here, Dr. Scott's opinions carefully distinguish the duties of the two entities while drawing a direct, logical, and factually well-grounded analytical link between Timur Trucking's severe, pre-existing safety deficiencies and Amazon's independent, common-law obligation to exercise reasonable care in onboarding, vetting, and retaining carriers

within its Relay program. Dr. Scott does not opine that Amazon violated specific FMCSRs targeted at motor carriers; rather, he demonstrates that Amazon, as a highly sophisticated shipper and network operator exercising extensive operational control, breached its independent standard of care by ignoring critical red flags.

Unlike the expert in *Brown*, who lacked a logical, connecting bridge showing a breakdown in the defendant's specific conduct, here, Dr. Scott's onboarding and retention methodology is firmly anchored to a concrete, chronological sequence of public safety alerts generated directly by the FMCSA *prior* to Amazon ever tendering a load to Timur Trucking. The factual timeline compiled by Dr. Scott is devastating, and entirely knowable to Amazon *long before* the fatal crash:

- **April 26, 2022:** The FMCSA sent Timur Trucking an official safety warning letter. (Exhibit A, p. 10).
- **May 7, 2022:** The FMCSA revoked Timur Trucking's operating authority due to a total lack of response to safety audit requests. (Exhibit A, p. 10).
- **June 14, 2022:** The FMCSA reinstated Timur Trucking's authority *without* the carrier ever passing a safety audit. (Exhibit A, p. 10).
- **July 15, 2022:** A mere 31 days after this dubious reinstatement, Amazon approved Timur Trucking into its Relay program, even though Timur Trucking had had no inspections from the FMCSA at that time. (Exhibit A, p. 10-11).

These are not post-accident surprises being retroactively imputed to Amazon; they were discoverable public records that Amazon chose to ignore.

Unlike *Brown*, where the expert cited generic guidelines without tying them to the data, Dr. Scott connects the specific discoverable deficiencies of Timur Trucking directly to Amazon's standard of care through discoverable public regulatory timelines, Amazon's internal risk-management documentation, and the explicit, sworn admissions of Amazon's own transportation and safety management representative. Because Dr. Scott builds the exact logical and factual

bridge that was absent in *Brown*, Amazon's challenge goes strictly to the weight of Scott's testimony before a jury, not its threshold admissibility under Rule 702.

**B. Dr. Scott's Onboarding and Retention Opinions Utilize Globally Recognized Transportation Safety Methodologies**

Amazon attacks Dr. Scott's safety compliance opinions under *Daubert*, claiming his conclusions that Timur Trucking was an "unsafe carrier" with "very little safety history" lack objective validation and amount to inadmissible *ipse dixit*. This argument entirely ignores standard practices in commercial transportation litigation. Under Federal Rule of Evidence 702 and established transportation logistics custom, the standard, reliable methodology commonly employed by fleet safety experts involves analyzing documented regulatory facts, applying specialized industry training, conducting programmatic safety research, and comparing those operational data points against industry standards and FMCSA benchmarks. Dr. Scott's methodology tracks this exact, accepted framework by executing a rigorous cross-examination of documented regulatory alerts, industry carrier selection standards, and Amazon's own corporate behaviors and admissions.

Specifically, Dr. Scott's analytical framework in his report relies upon a rigorous review of:

1. Documented regulatory alerts (the warning letter, the summary revocation, and the unaudited reinstatement). (Exhibit A, p. 10)

2. Industry-wide carrier selection benchmarks. (Exhibit A, p. 7, 10-11)

3. Amazon's own corporate behaviors, admissions, and subsequent 180-day baseline rule. (Exhibit A, p. 8-11).

In *Valentin v. Huerta*, 2022 WL 21770376, at *3 (S.D. Tex. 2022), the court directly addressed a motion to exclude a motor carrier safety expert who reviewed a company's internal safety records and deposition transcripts to critique its direct negligence. The *Valentin* court flatly rejected the defense's reliability challenges, establishing that a commercial transportation expert is fully permitted to look at the underlying records of an event and "offer his opinions that [the] Defendants... did not meet the 'standard of care' and... 'fell below the standard of care.'" The court explicitly determined that specialized testimony evaluating corporate compliance with hiring and supervisory frameworks "will assist the jury" and does not constitute an impermissible legal conclusion. *Id*.

Dr. Scott's onboarding and retention assessments follow the exact parameters approved by the court in *Valentin*. He evaluated the complete operational and regulatory dataset, including Timur Trucking's clear record of a driver application failure, language barriers, and subsequent summary FMCSA intervention, and compared it directly to the custom and practice expected of a reasonably prudent logistics network operator.

Amazon further challenges Dr. Scott's opinion regarding the inadequacy of Amazon's post-crash enforcement policies. (Doc. 284, p. 6). Following the fatal June 4, 2023 collision, Amazon issued an internal ban against Timur Trucking and its driver, Firdavs Kubaev, for poor safety behavior and misreporting the crash. However, Timur Trucking's owner effortlessly bypassed this ban by registering a new corporate entity under his wife's name. Amazon promptly admitted this successor entity into the Relay program and allowed the exact same banned driver, Mr. Kubaev, to continue pulling Amazon freight without any additional screening, special process, or training. Dr. Scott properly characterized this systemic loop as an "unacceptable safety policy". (Exhibit A, p. 11).

Amazon argues this opinion is a subjective belief. To the contrary, it is a factually grounded critique of a safety control failure. Indeed, Amazon's primary corporate representative, Ryan Sandefur, admitted that at the time of this collision, the network lacked the mandatory identity systems required to prevent carrier evasion. When asked about the systems in place to prevent a driver from logging back in under a different profile after a ban, Mr. Sandefur explicitly conceded, **"As far as something to detect a person logging in from a different device, no, because—well, just no, is the answer, Mr. Vaughn"**. (**Exhibit B**, Sandefur Depo, p. 104-105, ln. 25-2).

Mr. Sandefur further confirmed that it wasn't until late September or early October of 2023 that **"the full launch of driver verification had been completed, meaning all new profiles had either been prompted and submitted verification and passed, and all existing profiles had been prompted for verification".** (Exhibit B, p. 194, ln. 16-20).

In *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019), the Fifth Circuit emphasized that under Federal Rule of Evidence 702, the baseline standard for an expert assisting the trier of fact is easily satisfied, explicitly holding that "helpfulness threshold is low: it is principally ... a matter of relevance." 922 F.3d 285, 294 (5th Cir. 2019). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Id.* (citation omitted). "Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.*

Dr. Scott's opinion that Amazon maintained an unacceptable post-crash enforcement loop is firmly grounded in concrete, undisputed physical evidence and a direct chain of operational

facts. Tracing a known safety risk, mapping how that risk circumvented corporate enforcement boundaries, and concluding that the control gap is unacceptable under standard fleet safety custom is a recognized, reliable framework for a transportation consultant. Under Fifth Circuit standards, any disputes regarding the conclusions generated by this data-driven review go strictly to the weight of the evidence before a jury, not its threshold admissibility.

### C. Dr. Scott's Operational "Control" Opinion Follows Established Statutory and Common-Law Definitions

Amazon contends that Dr. Scott's conclusion that Amazon "effectively acted like the motor carrier" due to its pervasive control over Relay carriers is an unprincipled legal conclusion.

Dr. Scott's opinion is a standard synthesis of operational facts compared against trucking industry definitions. He properly notes that Amazon owned or leased the commercial motor vehicle trailer involved in the crash and continuously tracked it via GPS. (Exhibit A, p. 7). Under the regulatory framework noted in *Puga v. RCX Solutions, Inc.*, 922 F.3d 285 (5th Cir. 2019), the degree to which an entity maintains operational control over leased or non-owned equipment bears directly on the functional characteristics of a motor carrier relationship. *Id.* at 291-293.

In his deposition, Amazon's corporate representative confirmed the structural reality of this electronic ecosystem. [redacted]

[redacted]

In his report, Dr. Scott maps out a constellation of tightly integrated operational controls enforced by Amazon over Relay drivers:

- Drivers are required to log into the Amazon Relay mobile application to execute the specific, automated tasks in the execution workflow. (Exhibit A, p. 8).
- Amazon provides proprietary, turn-by-turn routing directions and navigation that it expects drivers to use for every trip. (Exhibit A, p. 8-9).
- Amazon maintains continuous GPS tracking that automatically records a driver's exact location, arrivals, and speed variations. (Exhibit A, p. 8).
- If a driver is more than a single minute late for a delivery window scheduled unilaterally by Amazon, the carrier's aggregate on-time performance metric is penalized, directly removing their access to lucrative contract marketplaces. (Exhibit A, p. 8).
- Amazon executes direct, driver-level coaching, and retains the absolute, unilateral authority to permanently ban individual drivers from its property and network. (Exhibit A, p. 8-9).

Dr. Scott provides the critical industry context for the jury by explaining that "[m]any of these actions are traditionally performed by dispatchers for carriers," thereby providing the comparative framework by which a transportation safety expert evaluates whether a party's conduct mirrors that of a motor carrier. (Exhibit A, p. 9). This comparative synthesis is precisely the type of specialized industry knowledge Dr. Scott offers in his report to analyze the operational traits that distinguish independent contractor structures from de facto carrier control.

Again, "[q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (citations omitted). "Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.*

Dr. Scott's analysis regarding Amazon's control over its carriers, such as Timur Trucking, is relevant to the core issues of operational negligence and retained control, and because his comparative methodology is firmly anchored to a context-specific synthesis of undisputed data and corporate admissions, it satisfies the threshold mandates of Rule 702 and must be submitted to the jury to determine its ultimate evidentiary weight.

### D. Dr. Scott's Rigorous Factual Foundation Stands in Stark Contrast to Jurisprudence Requiring Exclusion

Wholesale exclusion of an expert under *Knight v. Kirby Inland Marine Inc.* or *General Electric Co. v. Joiner* (as cited in Amazon's Motion, Doc. 284 at p. 13 of 16) is reserved for opinions connected to data solely by the *ipse dixit* of the expert. Amazon's attempt to align Dr. Scott with cases involving a total lack of methodology is legally meritless.

For example, in *Bibbs v. Molson Coors Beverage Co., USA, LLC*, the court excluded an expert who was entirely unaware of any industry standards, failed to perform an independent investigation, and did not examine a single case-specific piece of documentation. 699 F. Supp. 3d 509, 512 (N.D. Tex. 2023). By contrast, Dr. Scott's opinions are built upon an *exhaustive* review of:

- Complete FMCSA regulatory data, warnings, and corporate registration timelines.

- Extensive deposition testimony from Amazon safety managers, Timur Trucking executives, and the driver, Mr. Kubaev.
- Amazon's own proprietary Relay terms of service, user guides, driver mobile application specifications, safety rules, and the specific bill of lading for the fatal load.

The entirety of what Dr. Scott has reviewed in this case as the basis and methodology in reaching his opinions is contained on Exhibit A, p. 13-28. This extensive documentation provides a rock-solid factual foundation under Rule 702. To the extent Amazon disagrees with the weight Dr. Scott assigns to these individual factors, its remedy is rigorous cross-examination at trial (or deposition, which it has not yet taken), not pre-trial censorship.

## IV. CONCLUSION

Dr. Scott is an eminently qualified motor carrier safety, broker, and shipper operations expert witness who possesses extensive commercial transport logistics infrastructure experience. His methodologies are standard within the industry and directly tethered to verifiable facts. His testimony is essential to assist the jury in understanding the complex commercial and technological web of Amazon's Relay program and how it applies to the facts of this case.

Plaintiff respectfully requests that this Court deny Amazon's Motion to Exclude Scott in its entirety.

Respectfully submitted,

D. Brett Turnbull Texas Bar No.: 24117282
Drew Haskins Texas Bar No.: 24127397
Andrew Moak Texas Bar No.: 24145839
**TURNBULL, MOAK, & PENDERGRASS, P.C.**
2501 20th Place South, Suite 425
Homewood, Alabama 35223
(205) 831-5040

(205) 848-6300, fax
bturnbull@turnbullfirm.com
dhaskins@turnbullfirm.com
amoak@turnbullfirm.com

Jay R Vaughn
**Hendy Johnson Vaughn Emery PSC**
2380 Grandview Dr
Ft. Mitchell, KY 41017
859-578-4444
jvaughn@justicestartshere.com

R. Keith Weber, Jr.
**Weber Law Firm**
2 Riverway Suite 1770
Houston, TX 77056
281-369-4719
281-369-4718 (fax)
rw@gulfcoastfirm.com

**ATTORNEYS FOR PLAINTIFFS AND PLAINTIFF-INTERVENORS**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13th, 2026, a true and accurate copy of the above and foregoing was sent via electronic filing through the court's e-filing system to the following:

FARRIS PARKER & HUBBARD
Collin J. Wynne
Rhett J. Hubbard
P.O. Box 9620
Amarillo, Texas 79105-9620

MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
Christian Riter Patno
1111 Superior Avenue East
Suite 2700
Cleveland, OH 44114

SMITHEE & RUSSELL, LLP
David Russell
John T. Smithee
320 S. Polk, Suite 920
Amarillo, TX 79101

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Stephen B. Smith
Geoffrey A. Belzer
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, TX 75202-3758

FREEMAN & NANCE, PLLC
Greg Freeman
2403 Line Avenue
Amarillo, Texas 79106

STEPTOE & JOHNSON PLLC
Christopher C. White
Katherine Compton
Erika Emmons
500 N. Akard Street, Suite 3200
Dallas, Texas 75201

Wright Close & Barger
Conor Harvey
Jessica Barger

Kelley Morris
1 Riverway Suite 2200
Houston, TX 77056
713-572-4321
harvey@wrightclosebarger.com
barger@wrightclosebarger.com
morris@wrightclosebarger.com

/s/*D. Brett Turnbull*
D. Brett Turnbull