IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JURNEE SCOTT LEYMAN, *Individually and as Administratrix of the Estate of Noah M. Leyman, Deceased*,<br><br>Plaintiff,<br><br>and<br><br>MICHAEL LEYMAN *and* ADRIANE LEYMAN,<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>AMAZON LOGISTICS, INC., AMAZON LOGISTICS, LLC, AMAZON.COM, INC., AMAZON.COM SERVICES, LLC, TIMUR TRUCKING, LLC, FIRDAVS KUBAEV, *and* KAMILODDIN ADILOV,<br><br>Defendants. | § | 2:24-cv-129-BR |

**MEMORANDUM OPINION AND ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

In early June of 2023, Noah and Jurnee Leyman were driving through Texas from Georgia. (ECF 286-1 at 48). At the time, both were serving on active duty in the United States Air Force. (*Id.* at 31, 46). They were driving across the country because Noah had been ordered to relocate to the State of Washington. (*Id.* at 33, 49). Jurnee had applied for a change of station and expected to follow Noah within a few months. (*Id.* at 49).

Between 2:00 and 3:00 a.m. on June 4, the Leymans were in their Hyundai Sonata, driving in the northbound lanes of United States Highway 287 in Potter County, Texas. (*Id.* at 23–24).

They were traveling from Dallas, Texas to Albuquerque, New Mexico. (*Id.* at 49). Noah was driving; Jurnee was asleep. (*Id.* at 44).

At the same time, Firdavs Kubaev was driving a semi-truck and hauling a loaded trailer in the southbound lanes of US-287. (*Id.* at 24; ECF 298-2 at 10). Kubaev, who is from Uzbekistan, has been in the United States on a green card since March of 2014. (ECF 298-2 at 5). Beginning in 2022, he worked for Timur Trucking, LLC as a truck driver. (*Id.* at 6–7). As of his August 2025 deposition, Kubaev could understand some English, but was not conversant in the language. (*Id.* at 5–6).

Kamiloddin Adilov, another immigrant to the United States from Uzbekistan, owned Timur Trucking, LLC. (ECF 286-1 at 154–155). Adilov formed the LLC in 2016, and began operating the company as a motor carrier in 2021. (ECF 332-1 at 11–12). On July 15, 2022, Timur Trucking became an approved motor carrier in Amazon's "Relay" or "Middle Mile" program, by which Amazon hires motor carriers to haul shipments between its warehouses. (ECF 286 at 7 n.2, 9; ECF 297 at 14).

That early morning of June 4, 2023, Kubaev was driving a truck owned by Timur Trucking, LLC and hauling a trailer owned by Amazon Logistics, Inc. (ECF 79 at 15; ECF 86 at 12; ECF 286 at 9–10, 28 n.7; ECF 297 at 13–14). He was traveling from Albuquerque, New Mexico to Wilmer, near Dallas, Texas. (ECF 286 at 9; ECF 297 at 14–15).

At some earlier time, a traffic accident had occurred in the southbound lanes of US-287. (ECF 297 at 13; *see also* ECF 308 at 2–3). As a result of that collision, local law enforcement stopped traffic in those lanes, which included Kubaev and his tractor trailer, and redirected it through a turnaround into the northbound lanes. (ECF 297 at 13; *see also* ECF 308 at 2–3).

Kubaev, misunderstanding the local officer's instructions and the posted signage, entered the northbound lanes and turned south, into oncoming traffic. (ECF 286-1 at 164–165).

According to one of Plaintiffs' expert witnesses and based on the event data recorder in their vehicle, Noah had the cruise control set at about 78 miles per hour. (ECF 298-1 at 47–48). Based on the engine control module from the semi-truck, the same expert reports that Kubaev traveled south for approximately thirty-six seconds, never exceeding fifteen miles per hour, before the truck and the Leymans' vehicle collided head-on. (*Id.* at 111; ECF 286-1 at 24). Jurnee was transported by air ambulance to a hospital in Amarillo, Texas. (ECF 286-1 at 24). Noah was pronounced dead at the scene. (*Id.* at 24). They were both twenty-two years old. (*Id.* at 30, 95).

Jurnee, in both her individual capacity and as the representative of Noah's estate, and Noah's parents Michael and Adriane Leyman, as Intervenors,[1] brought this federal suit for civil liability under Texas law against Timur Trucking, Adilov, Kubaev,[2] and four Amazon entities—Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com, Inc., and Amazon.com Services, LLC.[3] (*See generally* ECF 79 *and* ECF 80).[4] The Amazon Defendants have moved for summary judgment, asking for some or all of them to be dismissed from the case. (ECF 285). The case is currently set for jury trial beginning on November 2, 2026. (ECF 205 at 7).

The preceding summary of the factual circumstances at the core of this case is generally taken from the uncontroverted evidence and stipulated pleadings. However, the Court recounts those facts only to give context to the ruling pronounced today. As a matter of law, the Court is

---

[1] The Court refers to Plaintiff and Intervenor Plaintiffs collectively as "Plaintiffs."

[2] Collectively, the "Timur Defendants."

[3] Collectively, the "Amazon Defendants."

[4] Three other defendants were originally named but have since been dismissed from the case. (*See* ECF 303 *and* ECF 307).

incapable of making a judicial determination about what happened in those early hours of June 4, 2026. That is because the evidence provided by the Amazon Defendants to support their motion for summary judgment, combined with the evidence provided by the Plaintiffs to oppose that motion, is silent on a pair of questions only tangential to the subject collision: what members held ownership interests in two of the limited liability company Defendants on December 20, 2023, when this case began, and what states did those members call home?

With those two questions unanswered by the evidence, the Court cannot make a summary judgment finding that it has the subject matter jurisdiction to hear this case. *See Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657 (5th Cir. 2024) (Oldham, J.). For the reasons explained below, the Court must now, after three years of litigation, dismiss this case without prejudice.

## I. THE STANDARD

The United States Constitution establishes the Supreme Court and invests it with appellate jurisdiction over "cases" and "controversies" that are "between citizens of different states," but reserves to Congress the power to establish lower courts to try such cases in the first instance. U.S. CONST. art. III, §§ 1–2; *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). Relevant here, Congress has authorized the United States District Courts to hear such suits "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1).

These laws encompass two presently relevant limits on a trial court's jurisdiction—that is, the court's legal power to decide cases by saying what the law is.[5] The first limit, the "cases and controversies" requirement, has come to be expressed in the doctrine of "standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). Unless a participant in a lawsuit is a party in an actual case or controversy, federal courts lack the power to grant that participant any relief. *Id.* In this

[5] *See United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023) ("Jurisdiction is the power to say what the law is.").

case, it is undisputed that every party seeking relief has standing to do so, and the evidence summarized above supports that conclusion.

The second limit is the diversity requirement. Since at least 1806, the Supreme Court has interpreted the constitutional and statutory diversity requirement to mean that no person or entity on one side of a federal lawsuit may be a citizen of the same state as any person or entity on the other side of the case. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806); *accord Hain Celestial Grp., Inc., v. Palmquist*, 607 U.S. 421, 430 (2026). If any parties on opposite sides of a controversy are from the same state, and no separate source of law allows the case to proceed in federal court, then federal courts lack jurisdiction over the subject matter of the dispute. Generally, the inquiry concerns a party's citizenship at the time the lawsuit was initiated. *Grupo Dataflux v. Atlas Global Group, LP*, 54 U.S. 567, 574–75 (2004).

An individual, natural person's citizenship or "domicile" refers to that state in which they both reside and intend to make their home. *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (Oldham, J.). A person's residence in a state, because it does not imply an intent to remain, is only "prima facie proof" as to their citizenship. *Anderson v. Watt*, 138 U.S. 694, 706 (1891); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011). Each person acquires a domicile at birth, and a person's domicile persists until they acquire a new one by both coming to reside and intending to remain in some new state. *Preston v. Tenet Healthsystems Mem'l Med. Ctr., Inc.*, 485 F3d 804, 814 (5th Cir. 2007)

When before the court as representative of an estate, a party is a citizen of the same state as the decedent. 28 U.S.C. § 1332(c)(2). A limited liability company is a citizen of each state where any of the LLC's members are citizens. *Storey Mountain, LLC v. JPMorgan Chase Bank, N.A.*, 159 F.4th 294, 295–96 (5th Cir. Nov. 10, 2025) (Oldham, J.) (collecting cases). Finally, a

corporation is a citizen of those states by which it has been incorporated and in which it keeps its principal place of business. 28 U.S.C. § 1332(c)(1).

When a party brings a case or controversy to a court for resolution, that party bears an initial burden to properly invoke the court's jurisdiction. *Spokeo*, 578 U.S. at 338 (on a plaintiff's burden to plead standing); *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). But federal courts also have an independent obligation to assure themselves of their own jurisdiction. *Hertz*, 559 U.S. at 94 ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

There is also a relatively-novel burden on other parties, at least at the pleading stage, even if they are not the parties invoking the court's jurisdiction. That is because the Federal Rules of Civil Procedure were amended in 2022 to require all parties in any diversity case to file a disclosure with their initial appearance that must "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to" the party. FED. R. CIV. P. 7.1; *see* 340 F.R.D. 829 (2022) (transmission to Congress of materials prepared by the Advisory Committee on Civil Rules). In the Northern District of Texas, this document, which must also include financial disclosures, is called a "Certificate of Interested Persons" ("COIP"). N.D TEX. CIV. R. 3.1(c).

For standing, the Supreme Court has clarified that the burden escalates through the successive stages of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the beginning of the case, the pleadings stage requires only that a plaintiff make the appropriate allegations. *Id.* When a case comes to summary judgment, however, a plaintiff asserting standing

must furnish competent evidence supporting specific facts pertaining to standing. *Id.*; *see* FED. R. CIV. P. 56(e). Finally, "those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Lujan*, 504 U.S. at 561 (parenthetical in original) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n.31 (1979)). Standing, which requires plaintiffs to have suffered an injury traceable to the defendant's conduct and redressable by the court, is factually intertwined with the merits of a plaintiff's case, so it is generally easy for all parties involved to focus on that issue. *See Spokeo*, 578 U.S. at 338 (listing the elements of standing).

Subject matter jurisdiction in diversity cases, by contrast, depending as it does on the parties' states of citizenship at the beginning of the suit, often has no factual connection at all to the events of the underlying dispute. The evidence gathered to prove liability in a trucking accident case, for example, will not necessarily include evidence as to the members of a defendant LLC, or a defendant corporation's state of incorporation.

Accordingly, the Fifth Circuit, which holds appellate jurisdiction over this District Court,[6] has recently extended the *Lujan* requirements to apply with equal force to subject matter jurisdiction. *See Megalomedia*, 115 F.4th at 659; *accord Storey Mountain*, 159 F.4th at 296 ("The proof necessary to establish [a party's] citizenship varies with the procedural posture of the case."); *J.A. Masters Invs. V. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (per curiam); *and MidCap*, 929 F.3d at 313–14. In other words, at the pleading stage of any case, the court's exercise of subject matter jurisdiction must be supported by pleadings that allege the citizenship of each party. *Storey Mountain*, 159 F.4th at 296–97. At the summary judgment stage, jurisdiction must be supported by "evidence sufficient to support a jury finding of the citizenship of each" party. *Megalomedia*,

[6] 28 U.S.C. §§ 1291, 1294.

115 F.4th at 659. Finally, at trial, jurisdiction must be supported by evidence in the trial record that is sufficient to support entry of judgment. *J.A. Masters*, 117 F.4th at 322–24.

Before this line of cases, a trial court might have excusably entered summary judgment when the pleadings adequately alleged citizenship and no evidence was provided by any party to controvert those allegations. Trial courts in other jurisdictions might even, perhaps, still do so. The undersigned, though, is bound by published Fifth Circuit precedents under vertical *stare decisis*. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237–38 (1997). Further, under horizontal *stare decisis* and the "rule of orderliness," only an *en banc* Fifth Circuit decision or a Supreme Court decision can now change these subject matter jurisdiction standards for this trial court. *See, e.g.*, *Burgess v. Whang*, 152 F.4th 579, 593–94 (5th Cir. 2025); *but see United States v. Lezama-Ramirez*, 173 F.4th 191, 196 *et seq.* (5th Cir. 2025) (Oldham, J., concurring) (on the rule of orderliness).

The Court emphasizes the mandatory nature of these standards because it takes the merits of this case, as it takes every case, very seriously. A man died in this traffic accident. Plaintiffs lost a family member, and Jurnee Leyman suffered numerous medical injuries. For nearly three years, the parties have worked toward the goal of having a federal court determine who is liable for those losses and injuries, and to what extent.

Compounding the frustration, all parties agree that the Court has subject matter jurisdiction in this case based upon diversity of the parties. (ECF 79 at 9; ECF 80 at 10; ECF 286 at 15–16; ECF 297 at 31 n.5).[7] The parties' agreement, however, is irrelevant. "The parties cannot stipulate to diversity jurisdiction, just as they cannot stipulate to any other form of subject matter

[7] As explained more fully below, the Timur Defendants have technically denied in their pleadings that the Court has subject matter jurisdiction, but only on the basis of insufficient knowledge. (ECF 82 at 6 ¶39; ECF 83 at 7 ¶44). Their separately-filed disclosure statement pleads facts consistent with the Court's exercise of subject matter jurisdiction at the pleadings stage. (ECF 107 at 3). The Amazon Defendants similarly denied subject matter jurisdiction on the basis of insufficient knowledge at the pleading stage. (ECF 86 at 6–7 ¶39; ECF 90 at 7 ¶44).

jurisdiction." *Megalomedia*, 115 F.4th at 659 (citing *Ins. Corp. of Ir. V. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). This is not an arbitration panel chosen by the parties; it is a Federal Court, and any jurisdiction it holds must come from the Constitution and laws of the United States.

As an advance effort to avoid frustrations at this stage, the Court has repeatedly reminded parties of the applicable standards. (*See* ECF 124 at 1–2, 6; ECF 183 at 3–5; ECF 205 at 2, 6–7; ECF 296). At the pleadings stage, the Court reminded Plaintiffs that, because they are suing limited liability companies, the Court's jurisdiction depends in part on the membership of those companies. (ECF 74 *and* ECF 76). For the summary judgment stage, the Court announced the following requirements for all parties in both the current Second Amended Scheduling Order and the preceding Scheduling Order:

> Any brief supporting or responding to a motion for summary judgment must be accompanied by and include citations to a separately-filed appendix of **evidence sufficient to support a reasonable jury finding on any relevant jurisdictional facts**, and such brief must directly (1) state whether the filing party invokes or opposes the subject matter jurisdiction of this Court and (2) address the questions of fact and law that pertain to subject matter jurisdiction in this case.

(ECF 205 at 7) (emphasis in original); (*see* ECF 124 at 6).

Before proceeding to determine whether the parties satisfied those requirements, however, it bears explaining how courts proceed at summary judgment in general. A party in a civil suit may successfully move for summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute is one where a reasonable factfinder could return a verdict for either side, and a material fact is one that affects the outcome of the lawsuit. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) *and Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

A movant for summary judgment must either point to evidence that supports a claim or defense, or else invoke a lack of evidence supporting an opponent's claim or defense. FED. R. CIV. P. 56(c)(1). In response, the non-movant must either do the same, or else show the court that more time is needed to gather the necessary evidence. *Id.* at 56(d). Ordinarily, if a party wholly fails to make the necessary showing on a material issue, the court can either extend an opportunity for that party to present evidence, treat the fact as "undisputed for purposes of the motion," or adjudicate summary judgment without the benefit of the omitted showings. *Id.* at 56(e).

Whatever their approach and position, the parties in a summary judgment dispute are required to "cite to particular parts of materials in the record." *Id.* at 56(c)(1)(A). The trial court is required to consider the materials directly cited by the parties, but is within its discretion to consider other materials within the summary judgment record as well. *Id.* at 56(c)(3). Nevertheless, there is no burden on a trial court to "sift through the record in search of evidence to support a party's claims[.]" *Diamond Servs. Corp. v. RLB Contr., Inc.*, 113 F.4th 430, 443–44 (5th Cir. 2024).

The Court is required to view all cited evidence and, for disputed issues, to construe all reasonable inferences in favor of the non-movant. FED. R. CIV. P. 56(c)(3); *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). The Court is not permitted to weigh the credibility of evidence or resolve factual disputes, because that function belongs to the factfinder (i.e., the jury); the Court's role is merely to determine whether a reasonable factfinder could return a verdict based on the evidence. *Id.* at 160–61.

## II. <u>THE EVIDENCE</u>

In this case, the summary judgment evidence on subject matter jurisdiction comes entirely from the Amazon Defendants. Plaintiffs' response to the instant motion includes only the following footnote on the subject: "Amazon spends considerable time briefing jurisdiction. This issue is not

contested and it is clear the Court has jurisdiction in this matter." (ECF 297 at 31 n.5). Accordingly, if evidence is to support the Court's continued exercise of subject matter jurisdiction in this matter, it must be found in the Amazon Defendants' materials.

First, the Amazon Defendants point to Plaintiff's deposition testimony to show that, at the time this lawsuit was filed, she was a citizen of Georgia. (ECF 286 at 13; ECF 286-1 at 31). Specifically, Plaintiff testified that she was stationed in Georgia from February of 2020 to November of 2024. (ECF 286-1 at 31). Plaintiff remained in Georgia well after the initiation of this lawsuit in December of 2023, until her job specialization changed in 2024 and she was subsequently transferred to Washington. (*Id.* at 33–34).

Based on this evidence, the Amazon Defendants argue that Plaintiff was a citizen of Georgia at the time this lawsuit was initiated. (ECF 286 at 13). The instant motion is accompanied by sufficient evidence to support a jury finding that, on December 20, 2023, Plaintiff both resided and intended to remain in the State of Georgia.

The Amazon Defendants do not address Plaintiff's citizenship in her capacity as representative of Noah's estate. (*See generally* ECF 286). As noted above, in addition to her individual state of citizenship, Plaintiff is also a citizen of whatever State Noah was a citizen of at the time of his death. 28 U.S.C. § 1332(c)(2). Because Noah's transfer to Washington was never completed, he was a citizen of the state in which he most recently both resided and intended to remain. Based on Plaintiff's deposition testimony, that was the State of Georgia. (ECF 286-1 at 46–49). Accordingly, Noah was a citizen of Georgia, and Plaintiff in her capacity as representative of his estate is also a citizen of Georgia.

Next, the Amazon Defendants point to Intervenor Plaintiff Michael Leyman's deposition testimony, taken in 2025, that he had lived in New Jersey since 2012. (*Id.*; ECF 286-1 at 93).

Michael also testified that Intervenor Plaintiff Adriane Leyman, Michael's wife and Noah's mother, lived there too. (ECF 286-1 at 93). Thus, the Amazon Defendants argue, and they provide sufficient evidence to support a jury finding, that Intervenor Plaintiffs both resided and intended to make their home in the State of New Jersey as of December 20, 2023. (ECF 286 at 13).

As for the Amazon Defendants themselves, they support their allegations of their own states of citizenship with an unsworn declaration from Ryan Sandefur, who was a Senior Manager in Amazon's Risk Response and Continuous Improvement Team, and who was deposed as their corporate representative. (ECF 286 at 13–15). That declaration states that the information contained in Amazon Logistics, LLC's Amended Certificate of Interested Persons (attached to the declaration at ECF 286-1 at 142–46; originally filed at ECF 110) is correct to the best of Sandefur's knowledge. (ECF 286-1 at 140). As an unsworn declaration made on personal knowledge under penalty of perjury, and because the Amazon Defendants' corporate representative is competent to offer the same facts as admissible testimony at trial, Sandefur's declaration is competent summary judgment evidence supporting the allegations in the COIP. FED. R. CIV. P. 56(c)(4); 28 U.S.C. § 1746.

The COIP in turn, states that the sole member of Defendant Amazon.com Services, LLC is former Defendant Amazon.com Sales, Inc., which is a Delaware corporation with its principal place of business in Washington. (ECF 286-1 at 144). Together with Sandefur's declaration, this supports a summary judgment finding that Amazon.com Services, LLC is, like its sole member, a citizen of both Washington and Delaware.

The COIP also states that both Defendants Amazon Logistics, Inc. and Amazon.com, Inc. are Delaware corporations with their principal place of business in Washington. (*Id.*). Accordingly,

and based on Sandefur's declaration, the Court may find at summary judgment that those Defendants are citizens of both Washington and Delaware.

The first misstep in the Amazon Defendants' jurisdictional evidence relates to the last remaining of their number: Amazon Logistics, LLC. The COIP states that the LLC has two members, "Yoseph Haile and Eshetu Amedie, both of whom are individual residents of Washington [S]tate." (ECF 286-1 at 144). So far as the Court can tell, the record is otherwise completely silent as to these two individuals.

Allegations of Amazon Logistics, LLC's members' states of residence were sufficient to make a prima facie showing of that Defendant's citizenship at the pleadings stage, when the COIP was originally filed. However, they are not sufficient, alone, to support a jury finding that Amazon Logistics, LLC is a citizen of Washington or any other state. Because there is no evidence in the record that both listed members, at the time this case was filed, both resided <u>and</u> intended to remain in Washington, the Court cannot make a summary judgment finding as to this Defendant's citizenship.

Because there is another evidentiary deficiency mandating this Order's holding, the Court will proceed to consider the citizenship of the remaining parties: the Timur Defendants. Kubaev testified in his 2025 deposition that he had lived in Ohio since 2020. (*Id.* at 152–53). The Amazon Defendants argue, and the Court agrees, that this supports a summary judgment finding that Kubaev was a citizen of Ohio when this case began in 2023. (*See* ECF 286 at 15).

Next, the Amazon Defendants point to Defendant Kamoliddin Adilov's deposition testimony to establish that both Adilov and Timur Trucking, LLC are citizens of the State of Ohio. (*Id.* at 15) (citing to pages 13–14 and 28–29 of Adilov's deposition). However, the transcript excerpts from that deposition included in the Amazon Defendants' appendix do not contain the

cited pages. (ECF 287-2 at 26–27) (skipping from page 12 to page 126 of the deposition transcript). The excerpts included in Plaintiffs' response appendix also omit the pages cited by the Amazon Defendants. (ECF 298-3 at 5–6) (skipping from page 12 to page 77).

In other words, the summary judgment record itself is silent as to Adilov's and the LLC's citizenship. Because the Court has the discretion to limit its consideration to the cited evidence in the summary judgment record, this silence would suffice to support dismissal of this case. However, the Court has exercised its discretion to consider the remainder of the record, and has found the cited pages of Adilov's deposition transcript attached to the Amazon Defendants' reply in support of their separate motion to seal certain summary judgment evidence. (ECF 332-1).

The cited pages cover Adilov's testimony that he had lived in the State of Ohio for three years before the 2025 deposition was taken. (ECF 332-1 at 10). This is sufficient evidence to support a summary judgment finding that, on December 20, 2023, Adilov resided and intended to remain in the State of Ohio, and thus to support the Amazon Defendants' assertion that he is a citizen of Ohio. (*See* ECF 286 at 15).

The cited pages pertaining to the LLC, however, do not clearly establish the identity of its members. The cited deposition testimony establishes only that Adilov opened Timur as his "own company" in 2016, but did not start operating until 2021. (ECF 332-1 at 11–12). The Court, exercising its discretion to look beyond the cited materials, has located no evidence that shows Adilov is (or was in 2023) the only member of Timur Trucking, LLC.

The closest the Court has found is Kubaev's deposition testimony characterizing Adilov as the "owner" of the company. (*See* ECF 286-1 at 154–155). That testimony does not show that admissible first-hand testimony at trial from a competent witness will support the conclusion that no other members held an ownership interest in the company at the relevant time. It does not even

support a reasonable inference of that conclusion; Kubaev also testified about five other individuals who worked at Timur Trucking LLC in unspecified capacities—his own brother Fakhriddin Kubaev, Lukhmon Azizov, Umar Rabbimov, Chingiz Nabiev, and Azam Abdullaev. (*Id.* at 154). Any one of those individuals—not to mention the possibility of an outside investor—could have held an ownership stake in the company at the relevant time.

As noted above, Plaintiffs have not provided any jurisdictional evidence in response to summary judgment, nor did they request a Rule 56(d) extension to obtain such evidence. The Timur Defendants, who are not participants in the briefing on the instant motion,[8] have nowhere filed such evidence. As a result, the record does not contain sufficient evidence to support a verdict as to the identity of all members of Defendant Timur Trucking, LLC, nor the citizenship of those members.

To summarize, Plaintiff was a citizen of Georgia when this case began, and is a citizen of Georgia in her capacity as representative of Noah's estate, and Intervenor Plaintiffs were (and still are) citizens of New Jersey. Three of the Amazon Defendants are either citizens of Washington only, or of Washington and Delaware; Kubaev and Adilov are both citizens of Ohio. But because the Court cannot make summary judgment findings that Defendants Timur Trucking, LLC and Amazon Logistics, LLC are citizens of one or more states other than Georgia and New Jersey, the Court cannot find that it has subject matter jurisdiction at the summary judgment stage of this case.

## III. THE CONSEQUENCE

When a case has reached the summary judgment stage without the necessary evidence as to subject matter jurisdiction, the Fifth Circuit has remanded for jurisdictional discovery in the

---

[8] Former Defendant Ergash Annakukov did file a motion for summary judgment (ECF 279) that, because it wholly lacked evidence as to subject matter jurisdiction, was the subject of a Rule 56(e)(1) Court Order to supplement the record (ECF 296). That former Defendant, however, was terminated from this case before complying with that Court Order and before the Court considered the merits of his summary judgment motion. (ECF 303).

lower court. *Megalomedia*, 115 F4th at 660. Absent such an appellate order, however, it would be inappropriate for the Court to *sua sponte* order discovery in response to an unsuccessful summary judgment motion.

To see why, forget for a moment that the instant issue is subject matter jurisdiction. Suppose the issue were the Amazon Defendants' duty to the Leymans and the motoring public in general.[9] If the Amazon Defendants inadvertently omitted the portion of their appendix that included the relevant evidence, or if the Plaintiffs responded but made the same mistake of omission, the Court could give the relevant parties "an opportunity to properly support or address the fact[s]" under Rule 56(e)(1).[10]

If the Amazon Defendants attached their evidence, however, and it simply failed to adequately support their argument, or if the Plaintiffs were similarly unsuccessful in their response, that is a different situation. The Court clearly could not look at one side's evidence and conclude the necessary findings were unsupported, but that the side in question could "get there" if given the chance to either conduct more discovery or add more evidence to the record. Doing so would mean improperly weighing the evidence and would supplant the factfinder's trial role. *See Guzman*, 18 F.4th at 160–61.[11]

Judges in the Northern District of Texas have deployed this reasoning in a range of procedural postures. For example, in *Riddley v. CooperSurgical, Inc.*, 808 F. Supp. 3d 725, the undersigned remanded a removed case when the removing defendants failed to show subject matter jurisdiction in their motion for summary judgment. (N.D. Tex. 2025). *Riddley* was not the

---

[9] The Amazon Defendants have, in fact, moved for summary judgment on this ground. (ECF 285 at 1).

[10] This is, as mentioned above, how the Court responded to the former Defendant Annakukov's motion. (*See* ECF 296).

[11] *Cf.* N.D. TEX. CIV. R. 56.2(b) (limiting each party in any civil suit to one summary judgment motion).

first such case in this Court. *E.g.*, *Orona v. Quiktrip Corp.*, 3:23-cv-2193-N-BN, 2025 WL 854736 (N.D. Tex. Mar. 7, 2025), rec. adopted, 2025 WL 863471 (N.D. Tex. Mar. 19, 2025). The Court has also dismissed at least one originally-filed case when the plaintiff moved for summary judgment without making the necessary showing. *McIntosh v. Wal-Mart Stores Texas, LLC*, 2:25-cv-94-BR, Doc. No. 51 (N.D. Tex. July 15, 2026); *accord U.S. Fire Ins. Co. v. Chappell*, 3:25-cv-2080-K-BN, 2026 WL 1472244, *3 (N.D. Tex. May 26, 2026) (declining to make a recommendation on a plaintiff's summary judgment motion in an originally-filed case because the motion made no showing on subject matter jurisdiction).

The instant case differs in its procedural posture from those examples. The Plaintiffs originally filed in federal court, and the Amazon Defendants have moved for summary judgment. The fact remains, however, that the parties shared a burden, in having chosen to litigate in federal court, and in moving for and in opposing summary judgment, not only under Rule 56(c)(1)(A)–(B), but also under this Court's Orders and binding Fifth Circuit precedent, to make an adequate showing as to subject matter jurisdiction. *See Riddley*, 808 F. Supp. 3d at 732 ("Plaintiff, who bears a secondary burden to the extent she wants the case to remain in federal court, has also not carried it."); *accord Park Constr. & Bldg. Maint., LLC v. Bureau Veritas Project Mgmt. LLC*, 3:23-cv-2270-E-BN, 2026 WL 796495, *6 (N.D. Tex. Jan. 15, 2026); *and Penson v. Lakeview Loan Servicing, LLC*, 3:25-cv-1574-B-BN, 2026 WL 692366, *7 (N.D. Tex. Feb. 5, 2026). The parties have not carried that burden. Accordingly, the Court must now order the case dismissed.

## IV. CONCLUSION

Because this civil suit has reached the summary judgment stage and there is not sufficient evidence in the record to support the necessary factual findings as to subject matter jurisdiction, this case is DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly. The Clerk of Court is DIRECTED to terminate the Amazon Defendants' pending motions for summary

judgment (ECF 285), and for leave to file summary judgment evidence under seal (ECF 287), and their supplemental for leave to file evidence under seal (ECF 338), and then to close this case.

IT IS SO ORDERED.

ENTERED on August 26, 2026.

Lee Ann Reno

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE